**People of the State of Illinois, Plaintiff-Appellee, v. Cleo Bud Garner, Defendant-Appellant.**

Gen. No. 67–134.

Second District.

February 9, 1968.

8

Vern L. Davitt, of Rockford, for appellant.

William R. Nash, State's Attorney of Winnebago County, of Rockford, and Daniel D. Doyle, Assistant State's Attorney, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

In this appeal, the defendant-appellant filed an abstract of record which included neither the indictment, the judgment appealed from, nor the post-trial motions filed in the case.

 Where the abstract fails to show the indictment or the rendition of any judgment, the appeal may be dismissed. The court will not examine the record to reverse the judgment where an insufficient abstract is filed. The rationale of this rule is that the abstract is the pleading of the appellant by which the cause of action established in the transcript of record is presented for review, and it must be sufficient to apprise the court of the errors relied upon for reversal, without the examination of the record itself. People v. Parker, 345 Ill 181, 182, 177 NE 727 (1931). Also see: Harris v. Annunzio, 411 Ill 124, 126, 103 NE2d 477 (1952); People v. Nelson, 398 Ill 623, 626, 76 NE2d 441 (1948); People v. Bolds, 398 Ill 626, 628, 76 NE2d 456 (1948); People v. Hill, 388 Ill 247, 248, 57 NE2d 859 (1944). A further and pragmatic reason for this rule is that reviewing courts are multiple judge courts and only one transcript of the record is filed.

There exists a tendency on the part of appellants, in both criminal and civil cases, to flagrantly disregard Supreme Court Rule 342(e) (Ill Rev Stats 1967, c 110A, par 342(e))—a derivation, in part, from former Supreme

Court Rule 38 (Ill Rev Stats 1965, c 110, par 101.38)—which outlines the requisites of an abstract of record. We hereby call this dereliction to the attention of counsel and litigants and, without establishing a precedent for future observance, we will consider this case on its merits.

The defendant was indicted in April of 1963 on charges of armed robbery and robbery, in that, on March 26, 1963, he, by use of force or threat of use of force while armed with a gun, took certain money from Leonard Barber, at and within Winnebago County. He entered a plea of not guilty and counsel was appointed to represent him. Two eyewitnesses of the armed robbery—Barber, the owner and operator of a grocery store which was robbed, and Virginia Sullivan, a store clerk (whose testimony was not abstracted by the defendant)—each separately identified the defendant as the robber at a police lineup and at the trial.

The defense to the prosecution was alibi. Two witnesses —who admitted prior convictions of infamous crimes—testified for the defendant and stated that they were playing cards with him at an address on South Winnebago Street at the time of the robbery. These witnesses also said that two persons, other than the defendant, were playing cards with them at the time. The other persons were not called as witnesses.

The jury found the defendant guilty on both the charge of armed robbery and robbery. The court entered judgment on this verdict and sentenced the defendant to a term of not less than 5 nor more than 15 years in the State Penitentiary. It is from this judgment that the defendant has appealed.

The defendant has urged that the trial court erred in certain evidentiary rulings and in instructing the jury. He contends that the trial court erred in admitting the testimony of a police officer who testified on behalf of the People that while parked near the intersection of Winne-

11

bago and State Streets, he saw a blue car which answered the description of a car used in a holdup; and that Cleo Bud Garner and Harold Dwayne Smith got out of this car after it parked in the Chestnut Street parking lot.

At the trial, counsel for the defendant offered only a general objection to the testimony of the police officer and the reason—if any, he had for such objection —remained undisclosed. In fairness, the trial judge is entitled to be informed of the basis of the objection before he can be charged with error in his ruling on review. Before us, the defendant now contends that this evidence was hearsay and, therefore, inadmissible.

In People v. Trefonas, 9 Ill2d 92, 136 NE2d 817 (1956), at page 98, the court stated:

> "The function of an objection is, first to signify there is an issue of law, and, secondly, to give notice of the terms of the issue. . . . Objections to evidence should designate the particular testimony considered objectionable and point out the objectionable features complained of. . . . A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial."

Generally, objections to the admission of evidence must be specific enough to inform the court and the opponent of the ground or reason for the objection. A general objection to evidence, if overruled, cannot avail the objector on appeal. People v. Jennings, 298 Ill 286, 288, 289, 131 NE 619 (1921); O'Donnell v. People, 224 Ill 218, 223, 224, 79 NE 639 (1906); Wigmore on Evidence (Third Edition) Vol I, § 18, pp 332–336, inclusive. Thus, it is our conclusion that the defendant's general objection to the above question was not adequate to preserve any issue for this court to review. It did not affect any substantial right of the defendant or deprive him of a fair and impartial trial. Thus, we deem this an appropriate

12

occasion to invoke the specific objection rule above set forth.

While section 121–9(a) of the Criminal Code was repealed September 9, 1967, its identical language now appears in Supreme Court Rule 615(a). (Ill Rev Stats 1967, c 110A, par 615(a).) Consequently, the question of the consideration to be given by the reviewing court with reference to substantial and insubstantial errors lingers on.

The People called Virginia Sullivan as a witness, and at the conclusion of her cross-examination counsel for the defendant said: "Now before testifying today, have you talked to anybody about this case?" She replied: "Naturally, it's something you talk about." The defendant's counsel then commented: "No further question." Thereupon, the court asked the following questions of the witness:

"THE COURT: Who did you talk to, the police and the State's Attorney?

"THE WITNESS: Yes.

"THE COURT: Did you talk to anybody else?

"THE WITNESS: No, not today.

"THE COURT: At any time from the time of the holdup until this time, did anybody call you or did you talk to anybody else?

"THE WITNESS: Oh, this — — on June 12th, there were a couple in the store.

"THE COURT: Did they identify themselves?

"THE WITNESS: One said he was Bobbie Garner, his nephew, and the other—

"MR. PENNIMAN: (Interposing) I am going to object to this.

"THE COURT: You asked it, and I'm going to open it up and find out.

"THE WITNESS: The one came was Evelyn Moriarity. She didn't tell her name. But she had been

13

in the Labor News, and made a fuss about her picture being in the Labor News.

"MR. PENNIMAN: I object to this.

"THE COURT: You asked her if anybody talked to her. I want to know what they said.

"THE WITNESS: They wanted to be sure of my identity. They said he said he's heard his uncle had held us up, and he claimed to be Bobbie Garner. And he said he just wanted to be sure, a mistake could be made.

"And the girl said, 'I guess you know if this man is found not guilty, he'll be running this place.' And we turned in a statement to that effect.

"MR. PENNIMAN: I object to that, your Honor.

"THE COURT: You opened it up, who they talked to. You know, they can talk to both sides."

Again, we note that the defendant's objection was general and without any specification whatsoever. However, we will take notice of the reply of Evelyn Moriarity, as repeated by the witness, and the remarks of the witness concerning Moriarity's picture being in the Labor News, even though the objection did not preserve the question for review, since such alleged error lies in the general area which might affect the defendant's substantial rights and tend to deprive him of a fair and impartial trial.

Defense counsel's purpose, on cross-examination, in asking Virginia Sullivan whether she had talked with anyone before testifying and in not pursuing the line of questioning when the question was answered affirmatively, was obviously to create an inference that she had talked with the State's Attorney, or the police, concerning the case.

■ "Where a conversation is brought out on cross-examination, the prosecutor has a right on redirect examination to question the witness as to such conversation and a defendant cannot complain that on redirect exam-

14

ination the entire conversation was brought out." People v. Kostos, 21 Ill2d 496, 500, 173 NE2d 466 (1961). Also see: People v. Kalpak, 10 Ill2d 411, 423, 424, 140 NE2d 726 (1957) ; People v. Munday, 280 Ill 32, 58, 59, 117 NE 286 (1917).

██ ██ We believe that the State's Attorney could properly have interrogated the witness on redirect examination with reference to whom she had talked to, but that the redirect examination was limited to this question and could not be expanded in scope to include what was said at such conversations. Generally, both cross and redirect examination are limited to the scope of the preceding examination. People v. Berardi, 332 Ill 295, 299, 163 NE 668 (1928) ; People ex rel. Chaney v. Preston, 188 Ill App 93 (1914). However, the scope of such further examination is largely within the discretion of the trial court. City of Springfield v. Dalby, 139 Ill 34, 38, 29 NE 860 (1891).

██ ██ These conclusions lead to the question of the propriety of the trial judge in interrogating the witness and whether his questions and comment constituted an abuse of his discretion.

In People v. Marino, 414 Ill 445, 111 NE2d 534 (1953), at page 450, the court stated:

> "While the court has a wide discretion in the conduct of a trial, it must not invade the province of the jury by making comments, insinuations or suggestions indicative of belief or disbelief in the integrity or credibility of a witness. (Citations.) . . . While it is true that a judge has a right to question witnesses or call other witnesses to the stand in order to elicit the truth or to bring enlightenment on material issues which seem obscure, he must do it in a fair and impartial manner, without showing bias or prejudice against either party."

Also see: People v. Sprinkle, 27 Ill2d 398, 402, 403, 189 NE2d 295 (1963).

We find nothing unfair or partial in the manner in which the questions were presented by the court. However, the court abused its discretion in interrogating the witness relative to the substance of her conversation with Bobbie Garner and Evelyn Moriarity. Such interrogation exceeded the scope of the preceding cross-examination. Also, the court's final remark, "You opened it up, who they talked to. You know, they can talk to both sides," was inadvertent and bordered on impropriety. However, we do not regard this abuse of discretion to be of such consequence as to constitute reversible error.

The defendant also contends that the trial court erred in giving People's instructions 14, 15, 16 and 17 in that such instructions were repetitious. In People's instructions 14 and 15, the court defined the offense of robbery and armed robbery in the language of sections 18–1 and 18–2 of the Criminal Code (Ill Rev Stats 1967, c 38, pars 18–1 and 18–2). Such instructions were not misleading in this case, and the court did not err in giving them. People v. Hines, 30 Ill2d 152, 155, 156, 195 NE2d 712 (1964); People v. Galloway, 28 Ill2d 355, 363, 192 NE2d 370 (1963); People v. Lyons, 4 Ill2d 396, 400, 401, 122 NE2d 809 (1954).

In People's instructions 16 and 17, the court instructed the jury in the language of Counts I and II of the indictment with reference to the various elements which the People must prove beyond a reasonable doubt in order to sustain a verdict of guilty against the defendant with reference to such offenses.

When People's instructions 14, 15, 16 and 17 are considered as a series, they properly define the offenses charged, and set forth the elements which the People must prove beyond a reasonable doubt in order to sustain a

16

conviction of the defendant under Counts I and II of the indictment. We do not find them repetitious to the extent that the action of the trial court in giving such instructions constituted reversible error. People v. Welch, 22 Ill2d 558, 561, 177 NE2d 160 (1961).

Defendant's instruction 11, which the court refused to give, provided:

> "The Court instructs the jury that the defense of alibi in this case need not be proven to the satisfaction of the jury and beyond a reasonable doubt, but it is sufficient if the evidence tending to prove an alibi raises in your mind a reasonable doubt as to the whereabouts of the Defendant in this case at the time and place in question. If you have a reasonable doubt as to where the Defendants, or either of them, were at the time as charged in the Indictment, it is your duty as jurors to return a verdict of not guilty."

However, the court gave defendant's instruction 10, which provided:

> "The Court instructs the jury that when a person charged with a crime proves that he was elsewhere at the time of the commission of the crime, he is said to prove an alibi. Proof of an alibi need be sufficient only to raise in the minds of the jury a reasonable doubt as to the guilt of the Defendant such doubt arising from the fact that the evidence tends to show the improbability of the presence of the Defendant at the commission of the crime."

Both instructions pertained to the defense of alibi. Instruction 10 was articulate and properly instructed the jury on this issue. Instruction 11 was ambiguous in that it erroneously assumed the presence of two defendants in this case. In view of the adequacy of

17

instruction 10, and the ambiguity and inarticulateness of instruction 11, we find no error in the trial court's refusal to give instruction 11.

■ Thus, we find no reversible error in the giving or refusing of instructions, or in the court's evidentiary rulings. To justify a reversal of the verdict of a jury which has heard all of the evidence, the error relied on must either deny the defendant his substantial rights or materially prejudice the case before the jury. People v. Maurantonio, 8 Ill2d 60, 66, 132 NE2d 515 (1956). Such is not the case here.

■■ Notwithstanding the errors noted, we believe that the jury reached a proper verdict and that the defendant had a fair trial. We cannot say that the result would have been different without the trial irregularities. When the errors complained of could not reasonably have affected the verdict, the judgment should be affirmed. The question is not whether the record is perfect, but whether the defendant has had a fair trial and whether his conviction is based on evidence establishing his guilt beyond a reasonable doubt. People v. Sleezer, 9 Ill2d 57, 62, 136 NE2d 808 (1956) ; People v. Smith, 63 Ill App2d 369, 384, 211 NE2d 456 (1965). The jurors determined that the evidence established defendant's guilt beyond a reasonable doubt and we find no basis for disturbing their finding. People v. Solomon, 24 Ill2d 586, 591, 182 NE2d 736 (1962). Accordingly, the judgment is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.