THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DENNIS HOWELL, Defendant-Appellant.

First District (4th Division)   Nos. 76-273, 76-274 cons.

Opinion filed September 29, 1977.

466

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Leonard J. Wojtecki, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Dennis Howell, was charged with battery and aggravated assault upon Willie King. After a jury trial, he was found guilty on both charges and was sentenced to two concurrent terms of 6 months in the House of Correction. The defendant appeals from these convictions.

At the trial, Ever King, wife of the victim, Willie King, testified that on December 13, 1973, at approximately 3:30 p.m., she and her husband were in the kitchen of their home. Her husband had returned from work and was eating. Her daughter entered the kitchen and said someone was at the door. The daughter was leaving for work and as she opened the door, two men came into the apartment, one at a time. The first man said he wanted to talk to Mr. King, but when Mr. King asked the man what he wanted, he said nothing. A second man, whom Mrs. King identified as the defendant, appeared at the kitchen door with a gun in his hand. The defendant ordered Mr. King to kneel. When Mr. King replied that he wished to discuss the matter, the defendant again ordered him to kneel. The daughter then jumped on the defendant's back and was thrown off. Mr. King picked up the kitchen table and lunged at the defendant. Mrs. King testified that her husband and the defendant began to struggle over the table. She was behind her husband, pushing on him. She stated that the defendant hit her husband on the back of the head twice. The first man then shouted, "Shoot man, shoot." As the defendant raised his weapon, Mrs. King grabbed his arm. The gun fired and a bullet grazed the side of Mr. King's head. She started screaming when she noticed her

husband's head was bleeding. The men ran out of the apartment. One of her daughters called the police. Mrs. King next talked to the police. As she was doing so, her husband picked up his microphone, went to the front door, closed it, then went into the bedroom, and then ran out of the apartment down the stairs. Mrs. King followed her husband down the stairs to the ground floor where she saw him talking to four police officers. Mr. King advised the police that the defendant lived on the seventh floor of their apartment building. They proceeded to the seventh-floor apartment, Mr. King knocked on the door, and Mrs. Howell opened the door. Mr. King asked to speak to Mr. Howell, and she said he was not home. Mr. King said he saw a shadow on the wall behind her. Mrs. Howell said it was her little girl, and Mr. King said he could see her little girl in the kitchen. She then slammed the door. One of the police officers then knocked and Mr. Howell opened the door.

Mr. King substantially corroborated his wife's testimony and stated that on December 13, 1973, at approximately 3:45 p.m., he was eating in the kitchen of his home. When his daughter opened the door to leave for work, an unknown man entered the apartment. The man asked to speak to Mr. King, placed a bag on a kitchen chair, and walked back toward the front door. Then a second man entered the apartment and approached him in the kitchen. Mr. King identified the second man as the defendant. King observed the barrel of a gun under the defendant's coat sleeve. The defendant pointed the gun at Mr. King and ordered him to kneel. Mr. King asked the defendant if they could talk things over. The defendant repeated his order. Mr. King picked up the kitchen table and a struggle ensued with Mr. Howell. King became tired, dropped the table, and was pushed to the floor by the defendant. King stated that the defendant then began striking him about the head with the gun. He then heard people screaming. After being struck in the head twice, the gun discharged and the defendant fled.

Mr. King further stated that he picked up his microphone, pursued the defendant to an elevator and then returned to his apartment. He secured a gun from the bedroom, left the apartment, and ran down the stairs. Mr. King met with four police officers on the first floor shortly after the incident and told them what had happened and where the defendant lived. King lived on the ninth floor and Howell lived on the seventh floor of the same building. They proceeded to the seventh floor where defendant was arrested.

On cross-examination, Mr. King was asked if he liked the defendant prior to this incident and Mr. King replied, "No." He was further asked if he knew that the defendant had made a complaint to his employer about his work. King responded, "No."

On redirect examination, the prosecution asked Mr. King "Are you

aware, perhaps, other than a complaint about your work, about any complaints being made to Mr. Lewis [King's work supervisor] by the defendant?" The defense objected on the basis that the question was irrelevant and too open-ended. The prosecutor argued that the defense opened the door on cross-examination. The objection was overruled. Mr. King said he was aware of such a complaint. He was next asked what the complaint was. The defense objected on the ground that the answer would be hearsay. The judge overruled the objection.

Mr. King then stated that Mr. Howell left a threat message with Mr. Lewis. The defense objected. The objection was sustained. The judge instructed Mr. King to tell exactly what was said if he knew. Mr. King testified, "He left a message with my boss to give my son, to tell him that when he would see him he was going to kill him on the spot." Defendant moved for a mistrial which was denied.

The defendant testified in his own behalf. He stated that on December 13, 1973, he went to the Urban Progress Center to see about getting in school or applying for a work training program and returned home around 1:30 p.m. When he arrived home, his wife, a friend, Curtis Harris, and his daughter were there. He, his wife, and Harris played cards for a little over 2 hours, until about 3:45 or 4 p.m. when Harris left to meet his mother. Mr. Harris corroborated this portion of defendant's testimony.

The defendant and his wife then played chess for about 5 minutes. He then testified that he went to bed and instructed his wife to tell anyone who came to the apartment that he was not at home. Mrs. Howell corroborated the defendant's testimony. Mr. Howell further testified that he never related threats to anyone through Mr. Lewis.

Mr. Lewis was called in rebuttal. He testified that about 10 days prior to December 13, 1973, he had overheard a conversation between Mr. Howell and another person unknown to him. When Mr. Lewis was asked to repeat what Mr. Howell said, the defense objected and requested a side bar.

At the side bar, the State related what Mr. Lewis would say about the overheard conversation. Mr. Howell allegedly said, "Somebody is trying to put the impregnation of this girl on me and I think Alvin King is behind it as well as Mr. King and I am going to kill that son-of-a-gun, and I am going to do in his father, too." The defense objected on the ground that such testimony was highly inflammatory. The objection was sustained and the State asked no further questions. Also, the defense asked no questions.

During closing argument, the prosecution pointed out that the victim was as defenseless "as a sheep being led to slaughter." The defense objected to the characterization and was overruled. At the conclusion of the trial, the defendant was found guilty of aggravated assault and battery

and was sentenced to two concurrent terms of 6 months in the House of Correction. The defendant appeals.

The issues presented for review are (1) whether the defendant is entitled to reversal of his convictions and a remand for a new trial because the State introduced prejudicial hearsay testimony of other bad acts; (2) whether the defendant is entitled to a reversal and remand of his convictions because the State used improper closing argument to inflame the passions of the jury; and (3) whether the defendant is entitled to a reversal of his conviction for aggravated assault since it arose from the same transaction as the battery.

Relating to the first issue, the defendant contends that the rebuttal testimony of Mr. King regarding the message given to Mr. King's employer was hearsay evidence and, as such, was unreliable. He further argues that the admission of such testimony inflamed the passions of the jury because it introduced evidence of other bad acts.

The State argues that the testimony was not hearsay because it was used to establish malice, motive, or intent, and was not offered to prove the truth of the matter asserted. The State further argues that the defendant's inquiries on cross-examination pertaining to complaints made by the defendant to the victim's supervisor, opened the door for the prosecutor to investigate the matter further on redirect examination. The State noted that where one party questions a witness concerning a particular conversation, the other party is permitted to establish all that was said on the same subject in that conversation.

■■ Generally, both cross-examination and redirect examination are limited to the scope of the preceding examination. However, the scope of such further examination is largely within the discretion of the trial court. (*People v. Garner* (1968), 91 Ill. App. 2d 7, 15, 234 N.E.2d 39, 44.) Once counsel for the defense cross-examined Mr. King about his feelings toward Mr. Howell and about complaints made by the defendant to King's supervisor, the doors were opened for re-examination on these topics. (*Cf. People v. Scott* (1967), 82 Ill. App. 2d 109, 117, 227 N.E.2d 72, 76; see *United States v. Maggio* (3d Cir. 1942), 126 F.2d 155.) We feel the judge did not abuse his discretion here.

King's testimony, however, presents a further problem, *i.e.*, whether it is hearsay or admissible nonhearsay. Where evidence of a statement made out of court is offered to show the truth of the matter asserted and thus rests upon the credibility of the out-of-court asserter, the testimony is said to be hearsay. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741; *People v. Hannah* (1964), 54 Ill. App. 2d 218, 223, 203 N.E.2d 764, 766.) Testimony not offered to show the truth of the matter asserted is not hearsay. McCormick, Evidence §246, at 585 (2d ed. 1972).

■■ It is apparent from the record that the prosecution introduced this

testimony in order to explain Mr. King's previous dislike for Mr. Howell and at the same time rehabilitate their witness. This testimony was not offered to prove the truth of the substance of the complaint made by the defendant to Lewis and, as such, is admissible non-hearsay.

■■ Evidence frequently is offered for more than one purpose. In the instant case, one can readily deduce that King's testimony has a secondary purpose; that is, to prove the truth of the matter asserted. In such a case, we are confronted with a double hearsay problem. Regarding the communication from the defendant to Lewis (the first level), we find no hearsay problem. Any and every statement by an accused person, so far as not excluded by the doctrine of confessions, or by the privilege against self-incrimination, is usable against him as an admission. (6 Wigmore, Evidence §1732 (1976).) It has never been doubted that the threats of an accused person are admissible to show his doing of the deed threatened. (6 Wigmore, Evidence §1732 (1976); see also, 1 Wigmore, Evidence §105 (1940).) Illinois law is in accord. In *People v. Poland* (1961), 22 Ill. 2d 175, 183-84, 174 N.E.2d 804, 808, the defendant was convicted for the murder of his wife, Maria Poland. In that trial, a municipal court judge testified that at a nonsupport hearing before him, Maria Poland, under oath and in the presence of the defendant, stated that on or about October 5, 1955, defendant had threatened her life and, in response to his wife's accusation, defendant said that he was sorry and would not do it again. This testimony was held to be competent as bearing upon defendant's motive and also to show that he had threatened the life of his wife.

In *People v. Chew* (1977), 45 Ill. App. 3d 1024, 1029, 360 N.E.2d 417, 420-21, defendant was convicted for the involuntary manslaughter of his uncle. The defendant's brother testified that 4 hours prior to the death of his uncle, the defendant had threatened to kill his family. On appeal, the defense argued that his testimony was irrelevant, immaterial, and hearsay. The court found that the defendant's statement constituted an admission and further held that the defendant's conduct prior to his coming to his uncle's house was relevant to prove the issue of his state of mind on the evening in question and was therefore a proper subject of examination. Furthermore, it is well settled that evidence which establishes motive, intent, identity, accident, or absence of mistake is admissible even though it may also involve proof of a separate offense. (*People v. Dewey* (1969), 42 Ill. 2d 148, 157, 246 N.E.2d 232, 236-37.) It is apparent that the first level of the hearsay pyramid in the instant case would be admissible under any of these rules.

■■ The second level of King's testimony—the portion which covers what Lewis told King—presents a more difficult problem. We know of no exception to the hearsay rule which covers the second level here. If no

exception can be successfully invoked, the evidence is not admissible. See *A. H. Angerstein, Inc. v. Jankowski* (1962), 55 Del. 304, 187 A.2d 81.

■■ When evidence is admissible for one purpose but improper for another, it should be received and the opponent, if desired, has a right to an instruction limiting the extent to which, and the purpose for which, the jury may consider such evidence. When the opponent fails to request an instruction, the usual rule is that the one who fails to make the request cannot thereafter complain of its absence. (*People v. Chupich* (1973), 53 Ill. 2d 572, 579, 295 N.E.2d 1, 5.) The procedure which the defense should have followed in this case would have been to request a limiting instruction with respect to King's testimony. The defense failed to request a limiting instruction and, therefore, the evidence was properly admitted.

Regarding the second issue, the defense argues that the prosecution improperly compared the victim with a "sheep being led to slaughter" in its closing argument to the jury. The defense further argues that this comment was highly prejudicial and inflammatory and, therefore, the defendant is entitled to a new trial.

The People argue that the prosecutor's statement was a valid comparison based on facts which were in evidence and was therefore proper. The People further argue that even if the comment was improper, it neither substantially prejudiced the defendant nor was it a material factor in the defendant's conviction.

■■ It is well settled that it is proper argument for a prosecutor to draw inferences unfavorable to a defendant if those inferences are based upon evidence. (*People v. Williams* (1962), 26 Ill. 2d 190, 194, 186 N.E.2d 353, 356.) Likewise, it is not improper for a prosecutor to reflect unfavorably on the accused or dwell on the evil results of crime. (*People v. Clark* (1975), 34 Ill. App. 3d 570, 573, 340 N.E.2d 171, 173.) We have read the arguments, with our attention directed to this comment, and conclude that the bounds of proper argument were not exceeded as the inference was based upon evidence in the record.

■■ With respect to the third issue, the People's brief concedes that defendant's conduct constituting aggravated assault arose from the same transaction as the battery. The defendant is entitled to a reversal of his conviction and sentence for aggravated assault. *People v. King* (1977), 66 Ill. 2d 551, 556, 363 N.E.2d 838, 844-45.

For the foregoing reasons, the judgment of the circuit court of Cook County convicting the defendant of battery is affirmed, and the conviction for aggravated assault is vacated.

Affirmed in part, vacated in part.

DIERINGER, P. J., and ROMITI, J., concur.