THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELWOOD MAYS, a/k/a Edward May, Defendant-Appellant.

First District (4th Division) Nos. 77-1748, 78-1071 cons.

Opinion filed February 21, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Eisenstein, and Mark S. Komessar, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

At the conclusion of a bench trial before the circuit court of Cook County, defendant, Elwood Mays, was convicted of three counts of aggravated battery. (Ill. Rev. Stat. 1975, ch. 38, pars. 12—4(a), 12—4(a), 12—4(b)(1).) Defendant was sentenced to a prison term of one to three years on each count, the sentences to run concurrently.

On appeal, defendant contends: (1) he was denied a fair trial as a consequence of the State's improper closing argument; (2) the State failed to prove him guilty beyond a reasonable doubt; and (3) it was improper to impose multiple convictions and sentences upon him.

We affirm defendant's convictions for aggravated battery causing great bodily harm (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a)), for aggravated battery causing permanent disability (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a)); and for aggravated battery with a deadly weapon (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(b)(1)).

Willie Tipps, the complainant and the State's chief witness, testified that in September 1975, defendant borrowed a tape recorder from him. Tipps knew defendant approximately two years on a casual basis. Tipps and defendant made arrangements for the return of the tape recorder the next day, however, defendant failed to return the tape recorder. The following month, Tipps met defendant in the Cabrini Green neighborhood and defendant told Tipps the tape recorder was lost. Defendant said he would give Tipps money for its replacement. Defendant then agreed to pay Tipps $20 which was the value Tipps placed on the tape recorder. No specific arrangements to pay the money were made at that time.

In early November 1975 Tipps again encountered defendant in the Cabrini Green neighborhood. They arranged to meet at defendant's house on Friday, November 14, so that defendant first could obtain his

final paycheck for work done in a summer youth employment program. Tipps had also participated in the summer program.

On November 14, 1975, at 2:30 p.m., Tipps met defendant at defendant's home. Defendant told Tipps he did not have the paycheck but he could obtain the check from his partner, Rodney Banks, at the Subway Cleaners located on Oak Street, where defendant worked. Tipps and defendant then went to the Subway Cleaners.

After waiting sometime at the Subway Cleaners for Rodney Banks to arrive, defendant went inside the store and made several phone calls. Defendant returned and informed Tipps that he had to leave in order to run an errand for his grandmother. They then arranged to meet a bit later that day at the Subway Cleaners. They separated between 3:15 p.m. and 3:30 p.m. Tipps returned to the Subway Cleaners at approximately 3:45 p.m. where he met defendant. A few minutes later, Rodney Banks entered the store and said they would have to pick up defendant's check at the building of defendant's supervisor, located at 923 N. Sedgwick Avenue in the Cabrini Green housing project.

Tipps testified further that he and Banks accompanied defendant to the building in the Cabrini Green project. They arrived there at approximately 4 p.m. They took an elevator to a floor above the fifth floor; Tipps could not remember the exact floor number. Once outside the elevator, Banks and defendant walked down the hall, ahead of Tipps. Defendant could not remember which apartment belonged to his supervisor so he knocked on several doors, but no one answered. Without speaking, defendant then walked towards Tipps and, from a distance of 12 to 15 feet, shot at Tipps several times. Tipps was grazed just under the neck by three bullets which defendant shot at him. Tipps then fell to the floor. Thereupon, defendant facing Tipps and looking directly down at him, shot Tipps two more times. The last shot hit the bridge of Tipps' nose. Tipps further testified he could not recall whether defendant was firing the gun for 30 or 60 seconds.

Banks and defendant then ran down the stairs, and after several minutes, Tipps also left the building and walked to the nearby police station. Tipps informed the police that defendant shot him; he did not name Banks as an assailant. The police transported defendant to Henrotin Hospital for medical care.

The stipulated testimony of the examining doctor at Henrotin Hospital, Dr. Charles Givens, disclosed that Tipps sustained two wounds in the left submandibular region, which were reflective of one injury. The left side of his neck was grazed and the bridge of his nose was injured. Both wounds were reflective of two separate injuries. From these injuries, a foreign metallic body was lodged under Tipps' right eye and for medical reasons was not removed.

On cross-examination, Tipps acknowledged that a month after the incident, he spoke with Investigator Charles Rhodes. He denied telling Rhodes that he loaned defendant money and not a tape recorder. Tipps also told Investigator Rhodes that he had known defendant five years, although on direct examination he had testified that he had known defendant for two years. Tipps revealed that at the preliminary hearing, he had testified that he and defendant remained at the Subway Cleaners the first time for an hour and a half. Tipps acknowledged that on direct examination, he estimated they remained at the Subway Cleaners for about 25 minutes.

Sergeant Urdll Holmes, a police officer assigned to the Cabrini Green area, was called as a witness by the State. Holmes testified that at 4:05 p.m. on November 14, 1975, he received a call that shots had been fired at 923 North Sedgwick. Pursuing the investigation, Holmes interviewed Tipps at the hospital. Tipps told Holmes that defendant had shot him. Tipps described defendant's physical appearance. Cross-examination of Holmes revealed that Tipps informed the police that the incident took place on the ninth floor of the building and involved only one offender. The State then rested its case in chief.

Lawrence Haynes, owner of the Subway Cleaners, was called as a defense witness. Haynes testified that his store was not located on Oak Street, as Tipps testified, but on Orleans Street. On cross-examination, Haynes admitted that his store and another dry cleaning store were located approximately seven doors from Oak Street.

Defendant's grandmother, Dorothy Jefferson, also was called as a defense witness. She testified that she was a supervisor for the Mayor's Summer Youth Employment program and that the program ended during the last week in August. She further testified that the final paychecks were distributed 10 days later to the supervisors of the employees. On cross-examination, she admitted that she was not with her grandson when he picked up his check, although she asserted that she knew he obtained the check 10 days after Labor Day.

The defense next called Saundra Mays, defendant's girlfriend, to testify as an alibi witness. She stated that on November 14, 1975, defendant arrived alone at her south side home between 3:30 p.m. and 3:45 p.m. At 4 p.m., she and defendant left her home to go shopping. They returned to her home between 9:15 p.m. and 9:20 p.m., after eating dinner in a restaurant.

On cross-examination, Ms. Mays stated that she clearly remembered the time defendant arrived at her house because she had looked at a clock. She could not recall a conversation with a state's attorney investigator in September 1976. She did not remember telling the

investigator that between 4 p.m. and 5 p.m. both defendant and Rodney Banks arrived at her home.

Defendant testified in his own behalf. He denied that he had ever borrowed a tape recorder from Tipps. In support of his alibi defense, defendant asserted that he worked at the Subway Cleaners from 11 a.m. to 2 p.m. on the day of the incident. He then proceeded to the Chicago Housing Authority Outpost office to obtain his grandmother's check for her and cash it. After picking up the check, he left the office, bought some chicken and at 2:25 p.m., he returned to the Subway Cleaners. Rodney Banks met him at the Subway Cleaners, and at 3 p.m. they left together to cash defendant's grandmother's check. They then took public transportation to the south side and went to their respective girlfriends' houses. At 4 p.m., defendant arrived at Ms. Mays' house. At 4:15 p.m., they left to go shopping and returned home between 9:30 p.m. and 10 p.m.

On cross-examination, defendant asserted that Ms. Mays was incorrect when she testified that he arrived at her home between 3:30 p.m. and 3:45 p.m. Defendant was questioned about the amended answer to discovery filed by the defense which indicated that on November 14, 1975, defendant was at his grandmother's office between 3 p.m. and 5:30 p.m. Defendant denied supplying his attorney with the information contained in the amended answer to discovery. He denied that he had seen the document prior to the state's attorney showing it to him on cross-examination.

The defense called Charles Gratton, deacon and trustee of the Union Baptist Church, who testified to defendant's good character and reputation for peacefulness.

In rebuttal, the State called defendant's grandmother, Dorothy Jefferson. She testified defendant arrived at her office at approximately 2 p.m. on November 14, 1975. She admitted that in September 1976 she showed two investigating officers an office visitor's sign-in sheet which indicated defendant arrived at her office between 3 p.m. and 3:10 p.m. On cross-examination, she explained that at the end of the work day, she estimated and recorded the time reflected on the sheet because defendant, her grandson, had not signed the visitor's sheet. She insisted, however, that defendant's arrival time was 2 p.m.

The State then called Investigator Dick Lawrey who testified that Saundra Mays had told him she estimated that between 4 p.m. and 5 p.m. defendant arrived at her home, accompanied by Rodney Banks. On cross-examination, Investigator Lawrey acknowledged that he had later made a note of this conversation. He had not taken notes simultaneously with his interview of Ms. Mays. Lawrey stated, however, that he was

certain he would not misconstrue the time of the events as given to him by Saundra Mays.

Over defense counsel's objection on the grounds of surprise, the State in rebuttal called Laymontz Clark, a friend of Tipps. Clark stated that on November 14, 1975, at 3:30 p.m., he was leaving a drugstore located at Orleans and Oak Streets when he observed Tipps, defendant, and a person named Palmer, standing across the street approximately 40 feet away from him. On cross-examination, Clark stated that he observed defendant, Tipps, and Palmer for approximately five seconds. Clark also testified that defendant wore his hair in curls between one and three years ago. In surrebuttal, Daisy Washington testified that she had known defendant for nine years and had never seen him wear his hair in curls.

During closing argument, over defense counsel's objection, the state's attorney commented upon the inconsistency between defendant's trial testimony and the contents of the amended answer to discovery filed on defendant's behalf.

> "The only thing that's missing is who shot Willie Tipps? The defendant says, 'yes, I was with Rodney. Yes, I was at the cleaners right off Oak Street. Yes, I went to my grandmother's office.' That all corroborates Willie Tipps who they say has created the most incredible story.
>
> The defendant testified that he never saw this before, the answer to discovery that gives dates, times and places where the defendant was. It doesn't start a 12:00. It starts at 3:00 o'clock.
>
> Defense: Judge, I object to the use of discovery.
> * * *
> That is not a prior inconsistent statement. * * *
> Court: The objection is noted. Continue counsel."

After argument, the court found defendant guilty of the three counts of aggravated battery as charged. This appeal followed.

Opinion

I

Initially, defendant contends that he was denied a fair trial when the state's attorney in his closing argument improperly commented about an apparent inconsistency between defendant's trial testimony and an amended answer to a motion for discovery filed on defendant's behalf, but never shown to be specifically attributable to him.

In determining whether a closing argument is so prejudicial or inflammmatory that a conviction must be reversed, the reviewing court must consider the record as a whole and the arguments in their entirety.

(See *People v. Nemke* (1970), 46 Ill. 2d 49, 263 N.E.2d 97; *People v. Burnett* (1963), 27 Ill. 2d 510, 190 N.E.2d 338.) Only when the remarks result in substantial prejudice to the defendant is reversal required. *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432.

■■ Further, it is a well-established principle that in a bench trial, the court is presumed to have relied upon proper evidence and disregarded all incompetent evidence. (*People v. Pelegri* (1968), 39 Ill. 2d 568, 237 N.E.2d 453.) This principle applies to arguments and remarks of counsel. (*People v. Miller* (1964), 30 Ill. 2d 110, 195 N.E.2d 694.) Thus, we will not reverse unless it affirmatively appears that the court was misled or improperly influenced by such remarks and that they were productive of a judgment contrary to the law and the evidence. *People v. Grodkiewicz* (1959), 16 Ill. 2d 192, 157 N.E.2d 16.

Defendant was questioned on cross-examination about the inconsistency between his trial testimony, where he asserted he arrived at his grandmother's office at 2 p.m., and the response in the amended answer to discovery which estimated that defendant arrived there between 3 p.m. and 5:30 p.m. He denied supplying his attorneys with the information contained in the amended answer to discovery, and he denied reviewing the discovery documents prior to trial.

■■ A statement cannot be used as a prior inconsistent statement for impeachment purposes unless the statement is shown to be specifically attributable to that witness. (See *People v. Matthews* (1972), 7 Ill. App. 3d 1059, 289 N.E.2d 98.) Thus the State failed to establish that the discovery answer was a prior inconsistent statement since the answer was not specifically attributable to defendant. Since the discovery answer did not impeach defendant's testimony, and it was not substantive evidence, it was improper for the prosecution to refer to the amended discovery answer during closing argument. See, *e.g., People v. Rothe* (1934), 358 Ill. 52, 192 N.E. 777.

■■ We do not believe, however, that this improper comment requires reversal. (See *People v. Smith* (1972), 6 Ill. App. 3d 259, 285 N.E.2d 460.) Based on our review of the record and the prosecutor's 34-page closing argument, we cannot say that this one comment influenced the trial court's decision to the substantial prejudice of defendant as was the case in *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353.

In *Nuccio*, our supreme court reversed the judgment of conviction because the trial record contained "substantial numbers" of unsupported insinuations asserted by the prosecution. For example, by virtue of the prosecutor's cross-examination, there was an inference that the defendant police officer's prior pattern of promiscuous involvement was a basis for the fatal shooting with which he was charged. Other similar insinuations

as to the character and actions of the defendant were made by the State and denied by defendant. The State did not rebut the defendant's denial of the insinuated matter, although the State had ample opportunity to do so. The supreme court concluded that the number and serious nature of these adverse insinuations, which were never rebutted by the State, were prejudicial to the defendant. Accordingly, the court ordered reversal and remanded for a new trial.

In the instant case, the prosecutor made but a short comment which reflected upon defendant's credibility. This brief comment cannot be said to have substantially prejudiced defendant since the record discloses defendant's credibility already had been weakened by other substantial competent testimony. Laymontz Clark testified that he saw defendant with Tipps at 3:30 p.m., while defendant claimed that at this time, he was traveling to the south side. Defendant's girlfriend and alibi witness, Saundra Mays, testified defendant arrived at her home alone between 3:30 p.m. and 3:45 p.m. However, Investigator Lawrey testified she had told him defendant arrived with Banks between 4 p.m. and 5 p.m. Indeed, defendant admitted that Saundra Mays' testimony as to his arrival time was incorrect. Likewise, the trial court reasonably could have concluded that defendant's other alibi witness, his grandmother Dorothy Jefferson, could not recall with certainty the time defendant was at her office. Although she testified he was there at 2 p.m., a visitor's time sheet she had prepared indicated defendant was at her office between 3 p.m. and 3:10 p.m.

■■ Considering the nature and extent of the prosecutor's comment in light of the foregoing testimony and also considering the complainant Tipps' testimony, we cannot say the prosecutor's assertion represented a material factor in defendant's conviction. Nor can we say that the judgment would have been different had the prosecutor refrained from making this comment. See *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771; *People v. Whitley* (1977), 49 Ill. App. 3d 493, 364 N.E.2d 511; *People v. Hoggs* (1974), 17 Ill. App. 3d 67, 307 N.E.2d 800.

## II

Defendant next contends the inconsistencies in the testimony of Tipps, the complaining witness, render the evidence insufficient to prove him guilty of aggravated battery beyond a reasonable doubt because defendant presented credible alibi testimony.

■■ Where, as here, trial by jury is waived, the credibility of the witnesses, the weight to be accorded their testimony, and the inferences which may be drawn therefrom are within the determination of the trial court. (*People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551; *People v. Echoles*

(1976), 36 Ill. App. 3d 845, 344 N.E.2d 620.) It is the peculiar prerogative of the trier of fact to ascertain the truth where the evidence is irreconcilably conflicting. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) A court of review cannot substitute its judgment for that of the trial court on questions of evidence or the credibility of witnesses and cannot reverse a conviction unless the evidence or the credibility of the witnesses is so improbable as to raise a reasonable doubt of guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Moore* (1977), 50 Ill. App. 3d 952, 365 N.E.2d 1356.

Defendant argues that Tipps' testimony is so replete with inconsistencies and improbabilities that it is legally insufficient to sustain conviction. Defendant first notes that at trial, Tipps testified that the dispute involved a tape recorder, while prior to trial, Tipps stated to an investigator that the dispute involved a $20 debt. However, the record discloses this to be a minor inconsistency at best. Tipps and defendant had agreed to reduce the loss of the tape recorder to an acknowledged $20 debt due from defendant and payable to Tipps.

We believe that the other inconsistencies singled out by defendant likewise are immaterial. Whether Tipps knew defendant two or five years, whether or not defendant wore a jacket on the day of the shooting, and whether the time Tipps and defendant were at the Subway Cleaners store was 10 to 15 minutes or an hour and a half, are all collateral to the issue of whether or not defendant shot Tipps. Minor discrepancies in the testimony of an eye-witness do not destroy his credibility and are for the trier of fact to weigh in its deliberations. (See *People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214; *People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623.) Where identification testimony is positive, precise consistency as to purely collateral matters is not required to establish guilt beyond a reasonable doubt. See *People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072; *People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623.

In addition to the independent testimony of Laymontz Clark which placed defendant with Tipps at the Subway Cleaners on the day of the shooting, Tipps' testimony as to the sequence of events of that day closely follows defendant's admitted actions. Tipps testified and defendant admitted that defendant was at the Subway Cleaners twice on the day of the shooting. Defendant also admitted running an errand for his grandmother on that day, as Tipps testified.

■■ Tipps also testified consistently when he described the shooting. Tipps stated that defendant was 12 to 15 feet from Tipps when defendant shot Tipps several times, grazing his neck. After Tipps fell, defendant

again shot Tipps. This testimony clearly evidenced the fact that defendant committed the battery upon Tipps with a deadly weapon and with the intent to cause great bodily harm. (Ill. Rev. Stat. 1975, ch. 38, pars. 12—4(a), (b).) Further, this testimony, coupled with the evidence of Tipps' permanent injury provided a sufficient basis for defendant's third aggravated battery conviction: aggravated battery causing permanent disability. (Ill. Rev. Stat. 1975, ch. 38, par. 12—4(a).) Defendant does not deny that Tipps was seriously injured, but claims that Tipps fabricated defendant's participation in the crime. Immediately after the shooting, however, Tipps walked to the police station and identified defendant as his assailant. Under such circumstances, it seems highly unlikely that defendant's role in the shooting was fabricated.

■■ While defendant presented alibi testimony, this testimony offered but a counterproposition to the testimony of Tipps and thus created issues of fact for the trial court to resolve. (*People v. Moore* (1977), 50 Ill. App. 3d 952, 365 N.E.2d 1356.) A conviction may rest upon positive and credible identification of a defendant by a single witness, even though it is contradicted by alibi testimony of defendant. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.) The trier of fact is not required to accept alibi testimony over the positive identification of defendant even if the alibi testimony is given by a greater number of witnesses. *People v. Setzke* (1961), 22 Ill. 2d 582, 177 N.E.2d 168; *People v. Bullock* (1977), 51 Ill. App. 3d 149, 366 N.E.2d 475.

Defendant testified that shortly after 3 p.m. he was traveling to the south side and that at 4 p.m., he arrived at his girlfriend's house. However, Laymontz Clark testified that at 3:30 p.m., he saw defendant and Tipps at the Subway Cleaners on the near north side. Defendant's girlfriend and alibi witness, Saundra Mays, testified that he arrived at her home alone between 3:30 and 3:45 p.m. At trial, defendant admitted that Saundra Mays' testimony as to the time of his arrival was incorrect. Her testimony also was impeached by a statement she gave to an investigator prior to trial where she estimated defendant's arrival time as between 4 p.m. and 5 p.m.

■■ Similarly, defendant's grandmother, Dorothy Jefferson, stated that at 2 p.m., defendant was at her office, yet the visitor's sheet she gave an investigator prior to trial indicated that defendant arrived there at 3 p.m. In determining the credibility of the witnesses, the trial court could properly have considered these contradictions. That none of this testimony was given by unbiased witnesses also was a proper consideration and the trial court was not required to believe this alibi testimony. See *People v. Whitley* (1977), 49 Ill. App. 3d 493, 364 N.E.2d 511.

Thus, this case turned largely upon the credibility of the witnesses. Since the trial court, unlike this reviewing court, heard the evidence presented and observed the demeanor of the witnesses, the trial court was in a better position to evaluate the evidence and to appraise the witnesses' credibility. We will not disturb the trial court's determination.

■■ We believe that the evidence was not so improbable as to raise a reasonable doubt of defendant's guilt. Accordingly, we conclude that the evidence presented was sufficient to prove defendant guilty beyond a reasonable doubt of the charges of aggravated battery.

### III

■■ Defendant's last contention is that he was improperly convicted and sentenced for three counts of aggravated battery since the three offenses arose out of a single act. A defendant may not be convicted of multiple offenses which arise from a single act or course of conduct. (See *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People v. Walker* (1978), 58 Ill. App. 3d 535, 374 N.E.2d 880; *People v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689.) However, where more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered. *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845.

Thus our supreme court in *King* stated:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. *Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered."* (Emphasis added.) 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45.

■■ ■ From our review of the record, it appears that all three aggravated battery convictions arose "from a series of * * * closely related acts" encompassed in the conduct of pulling the trigger to the gun at least three separate times. Further, the offenses are not, by definition,

lesser included offenses and thus, convictions with concurrent sentences can be entered. (See *People v. Walker* (1978), 58 Ill. App. 3d 535, 374 N.E.2d 880.) Applying the *King* test to the facts before us, we observe that the offenses here are based on separate acts, each requiring proof of a different element. The convictions of all three offenses were, therefore, proper.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.