THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FREEMAN HALL *et al.*, Defendants-Appellants.

First District (1st Division) No. 79-2139

Opinion filed December 1, 1980.

Ralph Ruebner and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a jury trial, Freeman Hall and Louis Walker were found guilty of burglary and sentenced to six years in the Illinois Department of Corrections. Defendants appeal.

On appeal, Hall and Walker argue that (1) the trial court erred in denying defendants' motion to quash the arrests and suppress the evidence, and (2) the court erred in admitting hearsay evidence.

We affirm.

At the hearing on defendants' motion to quash the arrests and suppress the evidence, Officer Terence Hart testified that he and his partner

went to 1421 West Farwell after receiving a radio dispatch regarding two suspicious persons at that address. The officers entered the front foyer of the building, and through the locked door to the hallway, saw defendants enter the hall from a door at the opposite end. Hart motioned to defendants to come to the foyer and stopped them because they fit the descriptions of the persons in the police radio call.

Upon questioning by Officer Hart, defendants gave their names and addresses. One of the defendants stated that they were in the building seeking employment. After noticing that the name on one of the apartment bells was Hall, Hart asked Hall if he was related to the tenant. Hall responded that the tenant was his sister and that they were visiting her. Walker repeatedly nudged Hall as he spoke and finally said, "Shut up, dummy."

Investigator Sullivan, who had met Hart and his partner in front of the building, arrived at the foyer with Gordon Berg, the maintenance man. Berg identified defendants as the persons he had seen in the basement. After searching Hall, Sullivan recovered a set of keys which Berg identified. Defendants were subsequently arrested.

At trial, Gordon Berg testified that the basement and front and rear entrances were locked at all times. Tenants did not have keys to the basement. A locked room in the basement contained keys to all of the apartments. On each key was a white tag indicating the building address and apartment number.

While working in the building on the day in question, Berg saw defendants attempting to enter apartment 209. He knew they were not tenants and questioned their presence in the building. Defendants replied that they were looking for a friend and had the wrong apartment. Their friend lived in apartment 203. However, Berg knew the 80-year-old woman who lived in 203. Over defendants' objection, Berg testified that after defendants knocked on apartment 203's door, the tenant stated, "You don't belong here. Get away from my door. I don't know who you are."

Berg then called the police and reported suspicious persons in the building. He described them as two black men, approximately 6′1″ tall. One was wearing a blue trench coat, the other a green one.

Berg next saw defendants in the basement. The door to the basement which was normally locked, was unlocked. Defendants told Berg that someone in the building had work for them. Berg further testified that he hired all persons who worked in the building and that he had not indicated by advertisements or signs that he was hiring.

When Investigator Sullivan arrived, he and Berg went to the basement where they found the keyroom door open. The door had been locked prior to this time. The only other person besides Berg to have a key

to the room was not working in the building that day. When Sullivan later searched Hall, he recovered keys labeled 1421 West Farwell, apartment 201.

Paul Haisch testified that in the course of installing a phone in the building, he went into the basement and saw the keyroom unlocked. On prior occasions, the door was always locked. He saw defendants leave apartment 201 and then spoke to them. Defendants reentered apartment 201 using a key with a white tag, but left immediately after entering.

Laura Metcalf testified that she resided at 1421 West Farwell apartment 201, on the day in question. She did not know defendants, did not give them permission to enter the apartment, and did not offer them employment. Oscar Zeff, the manager and part owner of the building, testified that he did not give defendants permission to enter the building. He also confirmed Berg's testimony regarding the building's security. Officer Hart's testimony was essentially the same as that given at the pretrial hearing.

First, defendants contend that the trial court erred in denying their motion to quash their arrests and suppress the evidence. In support of this contention they offer three alternative arguments: (1) they were searched pursuant to an illegal stop; (2) the search preceded their arrest and was therefore not incident to the arrest; and (3) assuming that the search was incident to the arrest, the arrest was not based on probable cause.

■■ We first note that in deciding this issue, we are not limited to reviewing only the evidence produced at the hearing on defendants' motion. We may consider the entire record on review. *People v. Braden* (1966), 34 Ill. 2d 516, 216 N.E.2d 808; *People v. Dennison* (1978), 61 Ill. App. 3d 473, 378 N.E.2d 220.

An initial stop for investigation of possible criminal activity is warranted if an officer, in light of his experience, reasonably believes that the person stopped is committing, is about to commit, or has committed an offense. (See *People v. Byrd* (1977), 47 Ill. App. 3d 804, 365 N.E.2d 443.) The belief must be based on specific, articulable facts which would warrant the intrusion. *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Montgomery* (1977), 53 Ill. App. 3d 298, 368 N.E.2d 752.

■■ Here, defendants were stopped by Officer Hart because they exactly fit the descriptions of the persons referred to in the suspicious persons call on the police radio. They were also found at the exact location specified in the call. We find that these are sufficient articulable facts upon which an investigatory stop may be based.

Furthermore, it was reasonable for the officers to act on information acquired by police radio. *People v. McElroy* (1976), 44 Ill. App. 3d 1047, 358 N.E.2d 1180.

We further find that the subsequent arrest of defendants was based on probable cause and that the search conducted by Investigator Sullivan was incident to the arrest.

Probable cause is established by circumstances which would cause a reasonable, prudent person in possession of knowledge which has come to the attention of the arresting officer to believe the accused committed an offense. *People v. Bambulas* (1969), 42 Ill. 2d 419, 422, 247 N.E.2d 873, 875, *cert. denied* (1969), 396 U.S. 986, 24 L. Ed. 2d 450, 90 S. Ct. 480; *People v. McKnight* (1977), 55 Ill. App. 3d 1052, 1055, 371 N.E.2d 946, 948.

■■ Officer Hart questioned defendants regarding their presence in the building. They were unable to explain their reasons consistently. Investigator Sullivan accompanied Berg through the building. They found doors which were normally locked, open. When Sullivan and Berg appeared in the foyer where Hart had stopped defendants, Berg identified defendants as the individuals in the building whose presence caused him to call the police. All of these factors establish probable cause for arrest, and we therefore reject defendant's argument to the contrary.

■■ The search and arrest were practically simultaneous and therefore may be viewed as a single transaction. (*People v. Jones* (1977), 56 Ill. App. 3d 414, 371 N.E.2d 1093.) Furthermore, probable cause for arrest, as noted above, existed independently of what the search produced and the fact that the search preceded the arrest is immaterial. (*People v. Jones*; *People v. Johnson* (1975), 28 Ill. App. 3d 799, 329 N.E.2d 464.) Defendants' argument that their motion to quash the arrest and suppress the evidence on the ground that the search preceded the arrest is therefore without merit.

Secondly, defendants contend that the trial court erred in admitting Berg's testimony regarding the statements made by the occupant of apartment 203 after defendants knocked on her door. They argue that the testimony was hearsay.

■■ Hearsay is defined as testimony of an out-of-court statement used to prove the truth of the matter asserted therein. (*People v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689.) Here, the testimony was obviously used to prove that the truth of the matter asserted, that is, that defendants did not belong in the building and that they did not know the occupant of apartment 203. The testimony was admitted in error. However, where there is no reasonable possibility that a jury would have acquitted the defendants had the hearsay evidence been excluded, the admission of the evidence is harmless error. (*People v. Ward* (1978), 63 Ill. App. 3d 864, 872, 380 N.E.2d 883, 889.) In view of the other evidence offered at trial, we find that the admission of the evidence did not contribute to defendants' convictions and was therefore harmless error.

For the foregoing reasons, we affirm the judgments of the circuit court of Cook County.

Judgments affirmed.

O'CONNOR and CAMPBELL, JJ., concur.