No. 84-452

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

WESLEY SHARP,

       Defendant and Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

      Keller & German; Ann C. German, Libby, Montana

    For Respondent:

      Hon. Mike Greely, Attorney General, Helena, Montana
      William A. Douglas, County Attorney, Libby, Montana
      Susan Loehn, Deputy County Atty., Libby, Montana

Submitted on Briefs: May 3, 1985

Decided: July 8, 1985

Filed: JUL 8 1985

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendant appeals from a judgment of conviction of violating section 61-8-406, MCA. We affirm.

The defendant initially appeared before the justice of the peace in Lincoln County, Montana, on a charge of driving under the influence of alcohol. At that time, he moved the justice court to suppress the results of a breathalyzer test on the grounds that such test was the result of an illegal arrest and therefore inadmissible. The motion was denied, and the justice court, in a bench trial, found the defendant guilty. Defendant appealed this conviction to the District Court and renewed his motion to suppress. The parties agreed that the trial court would rule upon the motion based upon a set of stipulated facts. Ruling thereon, the District Court denied defendant's motion.

Defendant's motion to dismiss for lack of speedy trial was also denied, and a jury trial in District Court commenced October 1, 1984. At trial the motion to suppress was again renewed. The six-person jury found the defendant not guilty of driving while under the influence of alcohol, an offense defined by section 61-8-401, MCA, but found the defendant guilty of the offense of operation of a motor vehicle with a blood alcohol concentration of .10 or more, defined in section 61-8-406, MCA. The District Court entered an oral judgment on the jury's verdict. Defendant waived a pre-sentence report, and the District Court imposed the maximum penalty: 10 days in jail and a $500 fine, plus license revocation. The same day oral judgment was entered, the defendant appealed to this Court. The judgment and execution of sentence was stayed pending the determination of this appeal.

Several days after filing his notice of appeal from the judgment, the defendant filed a statement of record on appeal wherein he stated, pursuant to section 46-20-302, MCA, that because he was only appealing from the trial court's denial of the pre-trial motion to suppress, which was submitted to that court on stipulated facts alone, he did not intend to order a transcript for appeal. He contends that since the District Court considered the matter on a set of stipulated facts alone, that the same facts control our consideration of the denial of the motion.

The State, in response, argues that the motion was properly granted on the stipulated facts alone, but in the alternative, that other evidence adduced at trial supports the District Court's order. The defendant renewed his motion at trial, and thus any evidence in the record supporting the District Court's order should be considered. To that end, the State attached as an appendix a portion of the transcript of the trial where other relevant evidence pertaining to the issue of the stop and arrest of the defendant was produced.

We will consider the entire record, including the appendix provided by the State, for two reasons: (1) the defendant has not moved us to strike this evidence from the record; and (2) because of the rule that a ruling denying a motion to suppress is not final and may be reversed at any time, and thus a reviewing court may consider evidence subsequently received during trial. People v. Jones (Ill.App. 1983), 449 N.E.2d 547; People v. Taylor (Ill.App. 1981), 424 N.E.2d 1246. This rule is recognized in Illinois, c.f. People v. Taylor (Ill. 1971), 277 N.E.2d 878, 881; People v. Schlemm (Ill.App. 1980), 402 N.E.2d 810, from where much of our criminal procedure code is derived. Discussing this rule, the Appellate Court of Illinois, in People v. Schlemm, 402 N.E.2d at 816, observed:

3

> "Had the motion to suppress been denied at the suppression hearing, and had this Court determined that the evidence produced at that hearing did not justify denial of the suppression motion, this Court could consider the evidence introduced at trial to uphold denial of the suppression motion. (People v. Braden 1966, 34 Ill.2d 516, 216 N.E.2d 808) In commenting upon the above doctrine, Professor LaFave has stated: 'the notion that the trial record may be used by the appellate court to uphold a search or seizure notwithstanding the fact that the lower court erred in failing to suppress on the lesser amount of evidence produced at the pretrial hearing is an attractive one--after all, if it now appears that the fourth amendment was not violated, then why should the defendant be entitled to a windfall reversal of his conviction?' LaFave, Search and Seizure (1978), Vol. 3, § 11.7(c), p. 732."

See also, People v. Hall (Ill.App. 1980), 414 N.E.2d 201, 203.

The rule stated above does not alter the rule stated in State v. Rader (1978), 177 Mont. 252, 255, 581 P.2d 437, where we noted that "the general rule . . . is that when a motion is granted or denied, such becomes the law of the case, and the alleged illegality of the search cannot ordinarily be relitigated." Rader dealt with a situation where one judge had replaced another on the case. The policies supporting the "law of the case" doctrine do not apply in a situation, such as in the case at bar, where the same judge is on the case for its duration, accord, People v. Taylor (Ill. 1971), 277 N.E.2d 878. Further, in Rader, we recognized exceptions to the "law of the case" rule. In recognizing these exceptions to that rule, we cited to the annotation at 20 A.L.R.Fed. 13 (1974), which lists one of them as being where new evidence previously unavailable to the court is made known. Under either the Illinois rule stated above, or the Rader rule, we may in these

4

circumstances properly consider the whole record and apply it to appellant's allegation of error.

Here, the District Court, in considering the motion to suppress was restricted by the parties' stipulations. Alone, the stipulations provide minimal support for the court's ruling. Subsequently, though, new evidence not contained in the stipulations was adduced at trial that lends support to the District Court's order.

From a review of the record, the following appear to be the relevant facts: At 4:10 p.m., December 22, 1983, Joyce Hudson, the town clerk of Eureka, Montana, received an anonymous telephone call from a female at the First and Last Chance Saloon, who reported a possible DUI. The caller gave the license number of the vehicle involved, a description thereof, and the direction being traveled by the motor vehicle. Officer Jim Williams of the Montana Highway Patrol was in the office when the call came in. He got into his patrol car and headed north on Highway 93. He soon saw the described vehicle parked halfway off the road pointing in a southerly direction. On pulling around to approach the car from behind, Officer Williams noted skid marks leading to the vehicle, later determined to be 57 feet in length. As Officer Williams pulled up behind the vehicle, it slowly began to pull away. Officer Williams then stopped the vehicle. The driver was Ron Truman. Williams gave Truman a field sobriety test and determined that Truman was not under the influence of alcohol. When he was talking to Truman, Officer Williams noted a passenger in the vehicle, the defendant, Wesley R. Sharp. Officer Williams testified at trial that "[Sharp] was slumped down and looking like he was about halfway passed out. He was obviously either sick or drunk." Officer Williams then asked Ron Truman whether he had been driving since he had left the bar. Truman told

5

Officer Williams that he had just taken over driving when they were parked there, and that he did so "because Wes was too drunk to drive." Officer Williams then called back to the dispatcher and had her get ahold of the caller at the First and Last Chance Saloon. The caller was identified as Patty Garris, the bartender at the saloon. She was asked who had been driving the vehicle when it left the bar and answered that it was Wesley Sharp. Officer Williams then gave the defendant Miranda warnings and a field sobriety test. Based on that test, he arrested Sharp for driving while under the influence and took him to the police station, where the breathalyzer test was conducted. The test, given approximately an hour after the arrest, showed that the defendant Sharp had a blood alcohol level of .17 percent.

The defendant alleges that Officer Williams was without authority to stop the defendant's vehicle because he lacked probable cause to do so. This contention is erroneous. All that is required of an officer in making an investigatory stop is that he have a "particularized" or "reasonable" suspicion that criminal activity may be afoot. This is the applicable standard for an investigative stop of a vehicle; or in other words "some basis from which the court can determine that the detention was not arbitrary or harrassing." State v. Gopher (Mont. 1981), 631 P.2d 293, 295, 38 St.Rep. 1078, 1081, relying on United States v. Cortez (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d. 621. Here, Officer Williams had a sufficient basis for his particularized suspicion of illegal activity. A citizen had just called the police to report a possible DUI offense and had given the police dispatcher the car's license plate number and description and the direction of travel. These facts were corroborated when Office Williams found the described vehicle going in the direction and on the highway

6

reported by the telephone caller. When Williams came upon the automobile, it was stopped halfway off the roadway and began to pull away when he approached. Officer Williams noticed skid marks coming from the vehicle. He had a right at that time, based on reasonable suspicion and logical inference, to stop the defendant's vehicle to investigate a possible crime.

Appellant emphasizes the fact that the initial tip was given by an anonymous informant. Aside from the fact that all of the information given by the informant was corroborated at the scene, we also note that when information is provided by a "citizen informant" that information is considered presumptively reliable. See State v. Kelly (Mont. 1983), 668 P.2d 1032, 1043, 40 St.Rep. 1400, 1411; State v. Liestiko (1978), 176 Mont. 434, 439, 578 P.2d 1161, 1164; and 1 LaFave Search and Seizure Sections 3.3 and 3.4, (1978).

Alternatively, appellant argues that once Officer Williams determined that Ron Truman, the driver of the vehicle at the time of the stop, was not under the influence, that the scope of the permissible investigatory stop was ended and that anything that occurred thereafter was impermissible. This contention is also not persuasive. A founded suspicion to stop for investigative detention may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop. United States v. Medina-Gasca (9th Cir. 1984), 739 F.2d 1451, 1453; United States v. Portillo-Reyes (9th Cir. 1975), 529 F.2d 844, 850. Here, Officer Williams, after running a field sobriety test on Ron Truman, observed the passenger Wesley Sharp in the vehicle slouched over and apparently intoxicated. Based on that observation, Officer Williams inquired further. In response to the officer's questions, Ron Truman stated that the two had just switched places and that they did so because

7

Sharp was "too drunk to drive." To further corroborate this, Officer Williams went back to the squad car and had the dispatcher call the First and Last Chance Saloon. The informant, then identified, stated that Wesley Sharp was driving the car when it left the saloon. At that time, Officer Williams' investigation had produced facts that ripened into the probable cause to arrest Wesley Sharp. He did so, gave Sharp his Miranda warnings, and brought him to the stationhouse, where the breathalyzer test was administered. Clearly, in this case Officer Williams was simply investigating an alleged criminal activity and using all of his facilities to determine what had occurred. That was his job, and his duty. We do not find appellant's argument persuasive. An investigation or investigatory stop is guided by principles of reasonableness. Effective law enforcement requires some latitude to be given to investigating officers to react to and follow up on their observations. Drawing artificial distinctions or "time lines" in situations such as these does not comport with reality or common sense. All that is required, as stated above, is that the officer had some articulable, or particularized suspicion that criminal activity was afoot; in other words, that the particular investigation or stop was not solely arbitrary or for the purposes of harrassment. As long as the scope and duration of that investigation stays within these parameters, we have no difficulty with upholding such an investigation and any evidence of criminal activity adduced therefrom.

Justice Sheehy, in his dissent, has raised various issues and has expressed his opinion of the handling of this case in the District Court and this Court.

It is my opinion that defense counsel, both having excellent reputations, chose to present this appeal solely on

8

the issue of the validity of the order refusing to suppress the breathalyzer test results. No transcript was submitted, so it is not possible to determine the extent of participation by the defense in the settlement of jury instructions, submission of the special verdict form, or in the examination of witnesses. Therefore the opinion has been restricted to the issue presented on appeal.

Based on the foregoing reasons, the order of the District Court denying the defendant's motion to suppress the results of the breathalyzer test, and the judgment, are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, dissenting:

I dissent. I do not understand how the Court can sustain this conviction in the face of its obvious imperfections. Sharp has been deprived of due process, subjected to double jeopardy, and denied a speedy trial. Not one but three violations of the State's Constitutional rights have occurred. We should reverse the judgment of his conviction sua sponte.

Due Process

The defendant Sharp has been convicted of a crime for which no complaint, indictment or information was ever filed against him.

This case arrived in the District Court by way of appeal from a criminal conviction in a justice court. This means that there is not in the District Court file any information filed by a county attorney, nor a true bill by a grand jury. The founding papers on which the charges against Sharp are based must rest then in the papers that were transferred to the District Court from the justice court in which his original conviction was obtained.

In the justice court, the only charge against Sharp is that filed by highway patrolman James Williams on January 3, 1984, charging that Sharp, on December 22, 1983 committed the offense of "driving while under the influence of alcohol, second offense." No other charges were made against Sharp in the justice court. His sentence in the justice court on conviction was a fine of $500, his driver's license suspended for one year, and 173 days of jail sentence to be suspended on the condition that he take a chemical dependency program treatment.

Under § 46-17-311, MCA, all criminal cases on appeal from justices courts must be tried anew in the District Court. In this type of case, the District Court acts under its appellate jurisdiction. Section 3-5-303, MCA.

In the District Court, after trial, Sharp was found "not guilty of the offense of driving while under the influence of alcohol, a misdemeanor." His J.P. conviction was reversed.

However, Sharp was found "guilty of the offense of operation of a motor vehicle by a person with alcohol concentration of 0.10 or more."

Thus, Sharp was found guilty in the District Court of an offense for which he was never charged by information, true bill, or complaint.

Under Art. II, § 20, 1972 Montana Constitution, criminal offenses within the jurisdiction of any court inferior to the District Court "shall" be prosecuted by complaint. The justice court file does not contain a complaint based on alcohol concentration of 0.10. The same state constitutional provision relating to criminal actions in the District Court require either information or indictment. Neither an information nor indictment is contained in the District Court file.

With respect to justice courts, § 46-17-101, MCA, requires that all criminal prosecutions in the justice court be commenced by complaint under oath.

Under § 46-11-401, MCA, all charges against a defendant in a criminal prosecution must be in writing and charge the offense by stating the name of the offense, the statute involved, and the facts constituting the offense in the ordinary concise language. No such charge in writing appears

11

in the District Court file relating to the "operation" of a motor vehicle.

Sharp has been deprived of due process in that he has been convicted of a crime in a District Court for which he has never been charged.

The first time that the charge of operating a motor vehicle while having a blood alcohol concentration of 0.10 appears is in the instructions of the District Court to the jury.

The test of the sufficiency of the information (and presumably of the justice court complaint) is whether the defendant is apprised of the charges brought against him and whether he will be surprised. State v. Bogue (Mont. 1963), 142 Mont. 459, 384 P.2d 749.

Double Jeopardy

It is necessary to understand the state's statutes respecting driving under the influence of alcohol and of operating a motor vehicle under that influence to see that the District Court got trapped in egregious error because it did not understand the statutes.

There are two ways in which the State may prosecute a defendant for driving or operating motor vehicles under the influence of alcohol.

Under § 61-8-401(1)(a), MCA, it is unlawful for any person who is under the influence of alcohol "to drive or be in actual physical control of a motor vehicle upon the highways of this State open to the public."

Note, please, that under § 61-8-401, MCA, the offense is committed if one is driving, or is in actual physical control of a motor vehicle upon a highway while under the influence of alcohol.

12

With respect to the quantum of proof to establish a violation of § 61-8-401, MCA, relating to alcohol, the statutes establishes certain presumptions with respect to blood alcohol tests. If at the time of the alleged offense there is an alcohol concentration of 0.05 or less it is presumed that the person was not under the influence of alcohol. Section 61-8-401(3)(a), MCA. If there was at the time a blood alcohol concentration in excess of 0.05 but less than 0.10, there is no presumption, but the fact may be considered with other competent evidence in determining the guilt or innocence or the person. Section 61-8-401(3)(b), MCA.

If at the time there is an alcoholic concentration of 0.10 or more, it is presumed that the person was under the influence, but the presumption is rebuttable. Section 61-8-401(3)(c), MCA.

A different crime for operating a vehicle under the influence of alcohol is provided in § 61-8-406, MCA. There it is unlawful "for any person to drive or be in actual physical control of a motor vehicle upon the ways of this State open to the public while the alcohol concentration in his blood, breath, or urine is 0.10 or more."

Note please under § 61-8-406, the crime is defined by the status of the blood alcohol content. Nothing more than the blood alcohol concentration is required to be proved if the person is driving or in actual physical control of the motor vehicle at the time.

In sum, then, under § 61-8-401, MCA, a person may be convicted of driving or being in actual physical control of a motor vehicle while under the influence of alcohol if his blood alcohol concentration is in excess of 0.05 (50

13

milligrams per 100 milliliters) but less than 0.10 (100 milligrams per 100 milliliters) and other competent evidence shows he was guilty; if his blood alcohol concentration is 0.10 (100 milligrams per 100 milliliters) or more, there is a rebuttable presumption that he was under the influence of alcohol. Under § 61-8-406, MCA, proof of the blood alcohol concentration of 0.10 (100 milligrams per 100 milliliters) or more is sufficient proof of the alcohol influence.

The District Court did not so instruct the jury. Instead the District Court instructed the jury erroneously as follows:

> "The crime charged against the defendant is <u>driving while under the influence of alcohol</u>, a misdemeanor and all six of your number must agree in order to return either a verdict of guilty or not guilty.

> "To do so, it is necessary that you consider the crime of <u>driving while under the influence of alcohol</u> first and that all six of you find the defendant either guilty or not guilty of that charge.

> "In the event you find the defendant guilty of driving while under the influence of alcohol, you need go no further as you will have reached a verdict in this case. And shall contact the bailiff to return you to open court.

> "In the event you find the defendant not guilty of driving while under the influence of alcohol, you must then consider <u>the lesser included offense of operation of motor vehicle by a person with alcohol concentration of 0.10 or more</u>. You must then find the defendant guilty or not guilty of that charge. When you have done so, you have reached a verdict and need not proceed further but shall contact the bailiff to return you to open court."

The District Court erred in giving that instruction, first, because it divided the elements provided in both statutes "to drive or be in actual physical control of a motor vehicle" while under the influence of alcohol. The court dissected the statutes and erroneously determined that one statute concerned itself with actually driving the motor

14

vehicle, and the other statute concerned itself with "operation" of a motor vehicle. It committed grievous error when it instructed the jury that the "operation" of a motor vehicle was a lesser included offense of "driving" a motor vehicle.

Was the jury confused? It certainly was. During its deliberation, it sent out a question to the court, asking the following:

> "What is the definition of "driving" while under the influence of alcohol? And does this differ from "operation of a motor vehicle by a person with alcohol concentration of 0.10 or more?"

The District Court answered the question to the effect that "the instructions that have been given contain the law that defines these offenses." Again the District Court committed an egregious error.

Having been so erroneously instructed, and so erroneously answered, as might be expected, the jury returned a baffling verdict. It found Sharp "not guilty of the offense of driving while under the influence of alcohol a misdemeanor," but "guilty of the offense of operation of a motor vehicle by a person with alcohol concentration of 0.10 or more."

The District Court, having first erred by charging the defendant with an offense not stated in a complaint, information, or an indictment, compounded the error by determining that "operation" of a motor vehicle is a lesser included offense of "driving" a motor vehicle. This in spite of the fact that in each of the two statutes that relate to driving under the influence of alcohol, there is also included the "actual physical operation" of a motor vehicle.

15

Section 46-11-501, MCA, defines what is an "included offense" under our State statutes. The offense is included when it is established by proof of the same or less than all the facts required to establish a commission of the offense charged, or a lesser kind of culpability suffices to establish its commission.

As is demonstrated above, a crime of "operation" of a motor vehicle by driving or being in actual physical control of a vehicle with a blood alcohol concentration of 100 milligrams per 100 milliliters or more cannot be a lesser included offense of the crime described in § 46-11-401, MCA, driving or being in actual physical control of a motor vehicle under the influence of alcohol, because under the latter crime, a conviction may be had if the blood alcohol concentration is 50 milligrams per 100 milliliters. In other words, it takes a greater degree of proof or a greater degree of culpability to establish the "operation" crime than the "driving crime" as described by the District Court.

> "A lesser included offense exists when all of the elements of the lesser offense are necessary elements of the greater offense. Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime." State v. Roybal (Wash. 1973), 512 P.2d 718.

It should be apparent that Sharp has been subjected to double jeopardy in this case. Section 46-11-503, MCA. The offenses under §§ 61-8-401 (driving) and 61-8-406, MCA, (operation) were known to the attorney prosecuting the case in the justice court, were consummated prior to the original charge and jurisdiction and venue of both offenses lay in the justice court. A judgment of conviction for driving under the influence of alcohol second offense was obtained in the justice court. That conviction was reversed by the jury in

16

the District Court. Charging him in the District Court on the appeal with criminal operation constituted a new charge based upon the same transaction which could and should have been prosecuted in the justice court. Double jeopardy attaches to the conviction of "operation" in the District Court.

Again, Sharp has been deprived of a State Constitutional right, the right not to be "again put in jeopardy for the same offense previously tried in any jurisdiction." Art. II, § 25, 1972 Montana Constitution.

Speedy Trial

Under State v. Knox (Mont. 1984), 675 P.2d 950, 41 St.Rep. 126, a misdemeanor charge must be dismissed if the defendant's trial, following appeal from the conviction in the justice court, is not brought to trial speedily. Here the appeal was filed February 23, 1984 and trial commenced October 1, 1984, a lapse of 220 days. A motion was made to dismiss for lack of speedy trial and the trial court record does not show the disposition of that motion. The trial court record does reflect that there was a denial of the motion to suppress, based upon a purported stipulation, but the stipulation is not contained in the District Court file. I therefore would accord no respect to the order denying the motion to suppress and determine that the lapse of 220 days exceeded the permissible six months to bring this case to trial.

This case is a disgrace to the administration of criminal justice. The defense attorney did not raise the objections I have stated here, the county prosecutor did not charge the defendant in the justice court with all of the offenses chargeable under the laws at the time, and the

17

District Court compounded the errors either by disregarding the statutes or not reading them. The defendant's conviction should be reversed as a lesson to all concerned. Otherwise this Court continues the disgrace.

_____
John C. Sheehy
Justice

18

Mr. Justice William E. Hunt, Sr. dissenting and concurring:

I concur in the dissenting opinion of of Mr. Justice Sheehy except that I do not find anything in the record to indicate that the defendant was not well represented by his attorney.

_William E Hunt_
Justice