STATE OF MONTANA, Plaintiff and Appellant, v. RICHARD
E. RADER et al., Defendants and Respondents.

No. 13974.
Submitted June 13, 1978.
Decided July 12, 1978.
581 P.2d 437

Mike Greely, Atty. Gen., Helena, John G. Winston, County Atty., Craig Phillips argued, Deputy County Atty., Butte, for plaintiff and appellant.

Moses, Tolliver & Wright, R. Allen Beck argued, Billings, Leonard J. Haxby argued, Butte, for defendants and respondents.

MR. JUSTICE HARRISON delivered the opinion of the Court.

This is an appeal by the State from the granting of a motion to suppress in a burglary case.

Defendants were charged by Information filed on December 18, 1975, with the crimes of burglary and theft, felonies, in the District Court, Silver Bow County. Defendants entered pleas of not guilty to the charges. Thereafter, defendants filed a motion to suppress, which motion was heard on January 30, 1976. The motion was denied by the presiding judge, Honorable Arnold Olsen.

Trial was scheduled for September 14, 1976. Defendant Paul Rader changed his plea to guilty prior to trial. On September 13, 1976, defendant Richard Rader discharged his counsel, and his present counsel was called in substitution therefor. On September 14, 1976, counsel for Richard Rader appeared and moved for a continuance and for further discovery, and renewed the motion to suppress. The motions were denied. Trial commenced as scheduled and the case submitted to the jury. However, a mistrial was declared, as the jury was unable to reach a verdict.

On September 20, 1976, defendant Richard Rader filed an affidavit for disqualification of Judge Olsen, and the Honorable James D. Freebourn was called in. On March 8, 1977, defendant Richard Rader resubmitted his motion to suppress, for consideration in the light of a recent decision of this Court advanced as controlling the resolution of the fundamental issue of suppression in

the instant case. A hearing on the motion was conducted on March 9, 1977. The parties stipulated to the admission of the transcripts of the prior motion and trial. No new or further evidence was presented.

On August 5, 1977, Judge Freebourn entered new findings of fact and conclusions of law, granting the renewed motion to suppress. The State appeals from those findings.

The events leading to the arrest of defendants are set forth as:

At approximately 9:45 p.m. on November 8, 1975, Fish and Game Officer Garth Haugland observed a pickup truck in an area approximately 25 miles southwest of Butte, Montana; an area devoted almost exclusively to hunting. Officer Haugland stopped the vehicle to check for game violations. Occupying the vehicle were its driver, defendant Richard Rader, his brother, defendant Paul Rader, and one other person. The officer requested identification. However, defendant Richard Rader was unable to produce any identification, indicating he was without his driver's license. As the truck departed, the officer noticed it was carrying a load of furniture, covered in part by a canvas tarp. Officer Haugland contacted the Silver Bow County sheriff's office, reporting the suspicious nature of the vehicle and its load, and that the driver of the vehicle was without his driver's license.

The radio call was intercepted by sheriff's deputy, Everett Baumgartner, who requested that the Montana Highway Patrol stop the vehicle. Patrolman Stephen Barry stopped the truck shortly after it had entered upon Interstate 15. Patrolman Barry was shortly thereafter assisted by Patrolman John Odland. Both officers observed the furniture in the rear box of the truck. Patrolman Barry then brought defendant Richard Rader to the rear of the truck and front of the squad car, at which time the patrolman conducted a "license check" on defendant.

Deputy Baumgartner then arrived and observed the furniture in the truck. Noting that certain pieces of the visible furniture were similar to those he had seen on many occasions at a cabin belonging to one Andrew Johnson, Deputy Baumgartner radioed the sher-

iff's dispatcher, requesting that Andrew Johnson be contacted for the potential identification of the furniture.

The radio operator contacted Andrew Johnson, who indicated that he was the owner of furniture of the type described to him. Defendants were then arrested and transported to the county jail. While at the jail the sheriff's office received confirmation from Andrew Johnson that his cabin had been entered, and furniture removed.

Defendant Richard Rader was never given a ticket for failure to display a valid driver's license upon request, nor any other traffic violation.

On appeal, the State raises two issues:

1. Whether Judge Freebourn abused his discretion in reconsidering and overruling the prior decision of Judge Olsen on defendant Richard Rader's motion to suppress, on the ground of a change in or further clarification of case law on the issue of suppression.

2. Whether there existed probable cause to stop and arrest defendant Richard Rader.

Regarding the State's first issue, the general rule in federal practice is that when a motion is granted or denied, such becomes the law of the case, and the alleged illegality of the search cannot ordinarily be relitigated. The policy considerations favoring such a rule generally stress the economy of judicial proceedings, prevention of forum shopping, and the avoidance of trial courts performing appellate functions. Montana has no authority on this point of law.

However, it is also widely held that the initial denial of a motion to suppress is not binding in all cases. 20 A.L.R. Fed. 13, 17. It has been held that a second judge may reconsider the ruling of a prior judge where a new case or rule of law has developed which affects the prior ruling. *Schonfeld v. Raftery*, (D.C.N.Y.1973), 359 F.Supp. 380; *Brady v. Trans World Airlines, Inc.* (D.C.Del.1958), 167 F.Supp. 469; *Hayes v. Crutcher*, (D.C.Tenn.1956), 137 F.Supp. 853.

The parties hereto basically argue the applicability of this Court's recent decision in *State v. Lahr*, (1977), 172 Mont. 32, 560 P.2d 527, as affecting the prior ruling of Judge Olson, and controlling the issue of whether Judge freebourn abused his discretion in overruling Judge Olsen's denial of this motion to suppress.

In *Lahr*, an officer observed the defendant received a package from a person known to be involved in drugs. Considering the circumstances suspicious, the officer radioed another officer, informed him of the transaction, and requested that he stop defendant's vehicle. The second officer followed defendant's vehicle for some time. The officer testified defendant drove erratically and that, as a result, he stopped defendant's vehicle. The defendant was subsequently arrested for possession of marijuana within the plain view of the officer. Defendant was not charged with any traffic offense.

A majority of this Court in *Lahr* found that the traffic stop was a mere "pretext" and that the officers were acting on "mere suspicion" and without probable cause, holding as a result that "* * * mere suspicion on the part of the arresting officer is not enough." 560 P.2d 529. See *State v. Fetters & Lean*, (1974), 165 Mont. 117, 526 P.2d 122; *State ex rel. Wong You v. District Court*, (1938), 106 Mont. 347, 78 P.2d 353.

In addition we have the recent decision of *State v. Marshall*, (1977), 174 Mont. 278, 570 P.2d 909, reaching the same result, relying upon the authority of *Lahr*, and supporting the decision of Judge Freebourn. We find no error.

Assuming the correctness of defendant's contentions above, the determinative issue for review, Issue 2, concerns the application of the *Lahr* probable cause analysis to the facts of the instant case relating to the stop and arrest.

As recognized in *Lahr*, section 95-608(d), R.C.M.1947, provides the circumstances under which an officer may make a warrantless arrest:

"A peace officer may arrest a person when:

"* * *

"(d) He believes on reasonable grounds, that the person is committing an offense, or that the person has committed an offense and the existing circumstances require his immediate arrest."

The Court in *Lahr* further stated that the validity of an arrest under section 95-608(d) is determined by the presence of probable cause. The test for probable cause, voiced in *State v. Fetters & Lean*, supra, provides:

"* * * whether at that moment [the moment the arrest is made] the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing defendants had committed or were committing an offense and the circumstances required their immediate arrests. * * *" 526 P.2d 125. [Bracketed material added.]

■ Further, suspicion of an officer alone, unsubstantiated by some evidence upon which to base a belief that a crime is or has been committed, is not enough to establish probable cause, no matter what the subsequent search discloses. *State v. Lahr*, supra.

■ The State maintains the stop of defendants by the highway patrolman was justified under the Montana "Stop and Frisk" statute, section 95-719, R.C.M.1947. However, it is inconceivable how stop and frisk can be applied to the stop of a defendant in moving vehicle.

The State next argues the inapplicability of *Lahr*, urging that *Feaster v. Wilson*, (1973), 161 Mont. 520, 509 P.2d, be applied in its stead. However, *Feaster* appears less applicable, as the defendant therein was stopped and arrested pursuant to information received from a reliable informant, and defendant's subsequent actions were consistent with that information, thus satisfying the probable cause test of *Fetters and Lean*, supra.

We find the facts here parallel to the situation involved in *Lahr*. While defendants could have been stopped for failure to display a driver's license, such would have been mere pretext as to the testimony of Patrolman Stephen Barry at the hearing on the motion to suppress indicates:

"Q. Isn't it also correct the reason for the call from the Sheriff's office of Butte is you were suppose (sic) to stop and detain that vehicle until the Sheriff's office got there?   A.  That was the primary reason.

"Q.  That, in fact, was the primary reason for stopping the vehicle and the primary reason wasn't that you were going to stop for a driver's license?   A.  No, it was incidental.

"Q.  In fact, it is correct, isn't it, Officer, that Mr. Rader did, in fact, have a driver's license?   A.  Yes, on further looking into it, he did have one."

Highway Patrolman John Odland testified as follows:

"Q.  When you pulled up, did you have reason to believe a warrant for either of these gentlemen had been issued?   A.  No sir.

"Q.  When youl pulled up, did you have reason to believe a warrant for either of these gentlemen had been issued?   A.  No sir.

"Q.  When you pulled up, did you have a warrant for the arrest of either of these individuals?   A.  No.

"Q.  When you pulled up, did you have a warrant for the search of any persons or parties in this truck or do you know if a warrant for the search of any of the parties or vehicle had been issued? A.  No sir."

Here, the stop occurred well before the officers were even apprised that the furniture *might* belong to Andrew Johnson. We find, therefore, there was no probable cause for the arrest, and the evidence obtained thereby was properly suppressed by Judge Freebourn.

The decision of the District Court is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, SHEA and SHEEHY concur.