No. 80-485

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

MICHAEL GOPHER,

Defendant and Appellant.

_____

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade.
Honorable John McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

John C. Koch argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mark Murphy argued, Assistant Attorney General, Helena,
 Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Randall Snyder argued, Deputy County Attorney, Great Falls,
 Montana

_____

Submitted: June 11, 1981

Decided: JUL 9 - 1981

Filed: JUL 9 - 1981

_Thomas J. Kearney_
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant was charged with felony burglary and felony theft. After a hearing on May 9, 1980, defendant's motion to suppress illegally seized evidence was denied. A jury trial was held on August 18, 1980, and defendant was convicted on both counts. Defendant appeals, submitting that the Cascade County District Court erred in denying his motion to suppress.

At about 5:00 a.m. on March 15, 1980, a silent burglar alarm went off at the Warehouse Pawn Shop in Great Falls, Montana. Officer Stan Johnston arrived at the scene about a minute later. His investigation revealed a broken window, two large rocks on the floor, a number of empty spaces in a rifle rack, and a fresh set of tire tracks in the parking lot. While investigating he noticed a singular vehicle driving slowly past the scene and observed that the occupants exhibited an unusual curiosity in the crime site.

Johnston testified that he knew from past experience that it was not uncommon for burglars to return to the scene of the crime after simply breaking a window. If the break-in was undiscovered, they would then enter and take the goods. On the basis of these facts, Johnston called an assisting officer (Sharpe) and requested him to stop the vehicle. Officer Sharpe stopped and approached the vehicle shining his flashlight into the passenger compartment. He noticed several rifles on the floor. While examining the license of the driver, defendant Michael Gopher, the officer noticed the passenger's arm dropping toward the guns. When the officer drew his weapon and ordered the occupants of the car to get out of the vehicle, the driver accelerated and

-2-

headed north.  A subsequent pursuit by police terminated with the arrest of both persons in the car.

The sole issue before this Court is whether the trial court erred when it refused defendant Gopher's motion to suppress evidence he alleges was illegally seized.

The gist of defendant's argument is that the officer who initially "stopped" his car did not have probable cause to do so.  He maintains that the authorities must have probable cause to believe he had committed a criminal act and sufficient cause to arrest him to justify the search. See section 46-5-101(1), MCA.  Without probable cause, there can be no lawful arrest, and without the lawful arrest, a search cannot be properly made as being incident to the arrest.  See section 46-6-401(4), MCA.  Officer Sharpe, defendant maintains, must have had knowledge of sufficient facts to believe defendant had committed the burglary and that he must be immediately arrested.  Gopher emphasizes that the facts sufficient to properly arrest a defendant must be known at the moment of the arrest and not discovered during or after the arrest.  State v. Rader (1978), 177 Mont. 252, 581 P.2d 437.  Citing Rader, defendant concludes that this Court has made a clear statement to the effect that stop and frisk principles do not apply to a defendant in a vehicle.  581 P.2d at 440.

At the outset we recognize the Rader rule regarding stop and frisk.  Although dictum, such a clear expression by this Court prohibiting application of stop and frisk rules to automobiles cannot be ignored.

We also recognize that the facts known to Officer

Johnston at the time he directed Officer Sharpe to stop defendant's automobile fall short of probable cause. We, therefore, must determine whether Rader should continue to be the law in this State and, if not, what standard should be applied in circumstances such as exist before us here.

The State maintains that the "stop and frisk" doctrine should apply to vehicular stops, citing Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. In Terry, the Supreme Court ruled that it can be constitutionally permissible for an officer to stop and search a person, even in the absence of probable cause. 392 U.S. at 15. This type of encounter must be reviewed as to its "reasonableness," and take into account the police interest involved and existence of specific and articulable facts.

The most recent post-Terry decision regarding stop and frisk is United States v. Cortez (1981), ___ U.S. ____, 101 S.Ct. 690, 66 L.Ed.2d 621. In Cortez, the Supreme Court ruled that objective facts and circumstantial evidence suggesting that a particular automobile is involved in some sort of criminal activity is sufficient to warrant a limited investigatory stop. Chief Justice Burger writes:

> "The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions--inferences and deductions that might well elude an untrained person.
>
> "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articu-

-4-

lated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." 101 S.Ct. at 695, 66 L.Ed.2d at 629.

It should be noted here that Officer Johnston is an experienced and knowledgeable member of the Great Falls police department, having been with the force for over twelve years. This is an important element of the Cortez analysis, which emphasizes that experienced law enforcement authorities are allowed to draw certain conclusions which laymen could not properly draw in determining if a specific vehicular stop is legally valid. The Cortez court concludes:

". . . Thus, the test is not whether officers Gray and Evans had probable cause to conclude that the vehicle they stopped would contain 'Chevron' and a group of illegal aliens. Rather the question is whether, based upon the whole picture, they, as experienced Border Patrol agents, could reasonably surmise that the particular vehicle they stopped was engaged in criminal activity. On this record, they could so conclude." 101 S.Ct. at 697, 66 L.Ed.2d at 631.

This Court is convinced that the facts at the officer's disposal in this case are sufficient to affirm under Cortez. Further, our review of cases from neighboring jurisdictions reveals that the great trend of authority is in accord. Citing State v. Ruiz (1973), 19 Ariz.App. 84, 504 P.2d 1307, the court in State v. Dean (1975), 112 Ariz. 437, 543 P.2d 425, held that "'. . . [a] founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.'" 543 P.2d 425, 427 (quoting Wilson v. Porter

(9th Cir. 1966), 361 F.2d 412, 415).

In People v. Waits (1978), 196 Colo. 35, 580 P.2d 391, the Colorado Supreme Court applied the standards of Stone v. People (1971), 174 Colo. 504, 485 P.2d 495, stating:

> "'In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose.' 174 Colo. at 509, 485 P.2d at 497.
>
> "We have previously applied these standards to investigatory stops involving automobiles. People v. Mangum, Colo., 539 P.2d 120 (1975)." 580 P.2d at 393.

See also State v. Bartosz (1978), 34 Or.App. 123, 578 P.2d 426; Washington v. State (1978), 94 Nev. 181, 576 P.2d 1126.

Primarily applying the rules of Cortez, the State submits that sufficient particularized suspicion existed to justify the stop of defendant's car. The State's burden has two elements: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. The fundamental facts persuade us that the burden was met in this case.

The officers knew that a crime had been committed--probably theft, but certainly criminal mischief. They believed several guns had been taken. They knew a vehicle was probably involved. They observed one vehicle driving very slowly past the crime scene. Although his police car was not on the front street and did not have its flashing lights on, the occupants of the vehicle expressed an

inordinate amount of interest in the scene. These known facts, combined with the deductions made in light of twelve years' experience in crime investigation, led Officer Johnston to suspect defendant was involved in, or witness to, the crime.

We reaffirm the traditional rule of this Court that _dictum_ is not binding as controlling precedent, State v. District Court (1961), 139 Mont. 453, 471, 365 P.2d 512, 521, and feel compelled to abandon the language of _Rader_ which appears to preclude the application of the _Terry_ stop and frisk rules to vehicular stops. In light of the _Cortez_ decision, and other persuasive authority, we now hold that when a trained police officer has a particularized suspicion that the occupant of a vehicle is or has been engaged in criminal activity, or witness thereto, a limited and reasonable investigatory stop and search is justified.

The denial of defendant's motion to suppress and his subsequent conviction are affirmed.

_____
                    Justice

We concur:

_____
   Chief Justice

_____

_____

_____
   Justices