No. 85-79

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

IN THE MATTER OF THE SUSPENSION OF
THE DRIVER'S LICENSE OF WAYNE BLAKE

_____

APPEAL FROM:   District Court of the Fifth Judicial District,
               In and for the County of Beaverhead,
               The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Hon. Mike Greely, Attorney General, Helena, Montana
                Kimberly Kradolfer, Asst. Atty. General, Helena
                W. G. Gilbert, III, County Attorney, Dillon, Montana

        For Respondent:

                Max A. Hansen, Dillon, Montana

        For Amicus Curiae:

                Vincent J. Kozakiewicz, Dillon, Montana

_____

                        Submitted on Briefs: Oct. 3, 1985

                                    Decided: January 23, 1986

Filed:     JAN 23 1986

_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Petitioner, Wayne Lester Blake's driver's license was suspended for 90 days pursuant to § 61-8-402(5), MCA, for refusal to take a breathalyzer test. Blake appealed the suspension of his license to the Fifth Judicial District Court, pursuant to § 61-8-403, MCA. Following an evidentiary hearing, the trial judge stayed the suspension, pending a final appeal of his decision. The State filed a motion for rehearing. The motion was heard January 11, 1985. That same day, the trial judge issued an order affirming his previous order and clarifying the underlying reasons for the stay. The State appeals the order denying its petition for rehearing.

At the outset, there appears to be a disagreement between the parties as to the evidence this Court may consider on appeal. The notice of appeal states in pertinent part:

> The respondent State of Montana . . . hereby gives notice . . . of its intention to appeal this Court's order of January 11, 1985, denying the State's motion for reconsideration of the Court's underlying order of November 14, 1984. . . .

To determine whether the trial court properly denied the State's petition for rehearing, we must review the record relied on by the trial judge in reaching his decision to stay the suspension of petitioner's driver's license. Therefore, we will review the entire record of this case. See Rule 2, M.R.App.Civ.P.

Petitioner attended a club meeting on the evening of October 10, 1984. Following the business meeting, most of the members played cards. Though he did not play, petitioner stayed to watch the card games and to socialize. Petitioner and Bruce Parker were the last to leave the meeting. They drained several water pipes and locked the building prior to

2

leaving in their respective cars between 1:30 a.m. and 2:00 a.m. Petitioner testified that he drank four to five beers over the course of the evening.

Petitioner's route home from the meeting included traveling north on Montana Street through downtown Dillon, Montana. Officer Scott Zeitner was traveling south on Montana Street when he observed petitioner driving erratically. Zeitner testified that petitioner swerved in and out of his own lane numerous times. Petitioner and Parker, who had traveled behind him from the location of the club meeting to the point where Zeitner stopped petitioner, testified that petitioner's driving had not been erratic and that he had only swerved once. Petitioner testified that he was forced to swerve into the other lane in order to avoid a pedestrian. Neither Zeitner nor Parker saw a pedestrian.

Zeitner administered several field sobriety tests to petitioner, none of which were performed successfully. Petitioner was arrested and taken to the police station where he refused to submit to a breathalyzer test. His driver's license was subsequently suspended.

Petitioner appealed the suspension of his driver's license to District Court, alleging lack of reasonable grounds for the police officer to believe petitioner had been driving a vehicle while under the influence of alcohol. Section 61-8-403, MCA. However, the trial judge never reached that issue, holding instead that (1) the initial stop was illegal for lack of reasonable grounds for the police officer to believe petitioner was operating a motor vehicle while under the influence of alcohol prior to the time petitioner's vehicle was stopped; and (2) since the initial stop was illegal, petitioner's driver's license should not have been suspended.

3

The State filed a motion for rehearing, contending that the police officer needed only a "particularized suspicion of some kind of wrong doing" to stop petitioner's vehicle, not reasonable grounds. Following a hearing, the judge issued an order January 11, 1985, denying the motion. In that order, the trial judge held that a review of the evidence confirmed his initial, controlling finding of fact, that the police officer was not justified in making the investigatory stop. However, instead of relying on the "reasonable grounds" test, the judge stated:

> The evidence completely failed to meet the test of "particularized suspicion," as that term is defined in State v. Gopher 38 St.Rep. 178 and State v. Stemple 39 St.Rep. 1085; all the officer had was a "hunch" or "suspicion", and as the Supreme Court said in State v. Lahr 172 Mt. 32, "mere suspicion on the part of the officer is not enough."

In its appeal of that order, the State raises three issues:

1. Whether Officer Zeitner properly stopped petitioner's vehicle?

2. Whether the District Court erred in considering hardship factors?

3. Whether petitioner met his burden of proof in challenging his license suspension?

The proper test for determining whether an officer was justified in making an investigatory stop is that relied on by the trial court in its January 11, 1985, order, "a particularized suspicion of some kind of wrongdoing." State v. Gopher (Mont. 1981), 631 P.2d 293, 38 St.Rep. 1078. In order to prove the existence of a "particularized suspicion", the State must show: "(1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or

4

has been engaged in wrongdoing. . . ." Gopher, 631 P.2d at 296, 38 St.Rep. at 1081.

Section 61-8-403, MCA, sets forth the petitioner's rights to appeal. It reads:

> The department shall immediately notify any person whose license or privilege to drive has been suspended or revoked, as hereinbefore authorized, in writing and such person shall have the right to file a petition within 30 days thereafter for a hearing in the matter in the district court in the county wherein such person resides or in the district court in the county in which this arrest was made. Such court is hereby vested with jurisdiction and it shall be its duty to set the matter for hearing upon 10 days' written notice to the county attorney of the county wherein the appeal is filed and such county attorney shall represent the state, and thereupon the court shall take testimony and examine into the facts of the case, except that the issues shall be limited to whether a peace officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public, while under the influence of alcohol, whether the person was placed under arrest, and whether such person refused to submit to the test. The court shall thereupon determine whether the petitioner is entitled to a license or is subject to suspension as heretofore provided.

Under the statute, the District Judge should have determined if the police officer had reasonable grounds to believe the petitioner had been driving while under the influence of alcohol, whether the petitioner was placed under arrest, and whether petitioner refused to submit to the blood alcohol test. Those were the only issues provided under the statute, and he did not address them. Instead he focused on the question of the initial stop and the claimed lack of reasonable grounds for that stop.

In Petition of Burnham (Mont. 1985), 705 P.2d 603, 42 St.Rep. 1342, this Court pointed out that the implied consent law is a civil administrative proceeding separate and

5

distinct from the criminal action on the charge of driving while intoxicated. Each proceeds independently of the other. There is no connection between the criminal statute prohibiting the operation of the motor vehicle while under the influence of alcohol and the statutes requiring consent to a chemical test to determine blood alcohol content. The court should have ruled upon the sufficiency of the evidence to establish that the police officer had reasonable grounds to believe petitioner was driving under the influence of alcohol, that petitioner was placed under arrest, and that he refused to submit to the test. Substantial evidence was submitted on each of these issues.

In addition, we disagree with the conclusion of the District Court that the initial stop was illegal for lack of reasonable grounds for the police officer to believe petitioner was operating a vehicle under the influence of alcohol prior to the actual stop of petitioner's vehicle. There is no dispute that petitioner was driving in the vicinity of several bars around 2:00 a.m., which is near the closing time for bars in Montana. In addition, petitioner's own testimony established that he swerved into the wrong traffic lane. In itself, the driving of a vehicle into the wrong traffic lane may be sufficient to constitute a traffic violation under § 61-8-321, MCA. In addition, such uncontradicted evidence is sufficient to constitute a particularized suspicion that the petitioner may have been driving while under the influence of alcohol. We conclude that the conduct of Officer Zeitner met the particularized suspicion test of State v. Gopher.

Issue two is whether the District Court erred in considering hardship factors. As noted above the court having disposed of the case on grounds other than provided by

6

statute, we remand the case for further hearings on whether the petitioner should be granted a restricted driving permit. As to issue three, upon remand this matter can be further considered by the District Court.

The order of the District Court is vacated and the case remanded to the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____ ,

_____

_____

Justices

Mr. Justice John C. Sheehy, dissenting:

I dissent.

I.

Proceedings to suspend the driver's license of one who refuses to submit to a chemical test designated by the arresting officer (section 61-8-402, MCA) and the right of appeal granted such driver (section 61-8-403, MCA) are civil in nature. The proceedings therefore are governed by the Rules of Civil Procedure. Under Rule 52(a), M.R.Civ.P. "[f]indings of fact shall not be set aside unless clearly erroneous." The majority opinion ignores this rule of appellate review, ignores the findings of fact made by the district judge who heard the witnesses, and makes no excuse for its ignoratio elenchi.

Following are the pertinent findings of fact made by the District Court:

1. The petitioner is the President of the Dillon Jaycees. On October 10, 1984, he together with a number of his Jaycee associates were engaged in community service work, at the Club's facilities at the Beaverhead County Fair Grounds. During the course of the evening, a quantity of beer was consumed--petitioner admitted to having "four or five beers." However much was consumed did not affect the performance of their duties, and in fact petitioner secured the Fair Grounds facility, which involved among other acts, the intricate manipulation of a complicated bolt lock on a gate. Each of the members of the work party proceeded to their homes in separate vehicles. Petitioner departed the Fair Grounds at approximately 2 a.m. on October 11, followed by his companion.

2. The petitioner's route to his home involved stopping at a number of stop signs, including a railroad crossing. He proceeded north on Montana Street, followed by his companion, the latter confirming that all traffic laws were obeyed, and that petitioner was properly operating his vehicle. At a point near the 300 block of North Montana, the petitioner swerved into the south bound lane to avoid hitting a pedestrian. The following

colleague noted the "swerve", which was the only "erratic" maneuver in a dozen blocks.

3. A Dillon Police officer, travelling south on Montana Street also took note of the "swerve." The officer swore that there were multiple weavings in and out of petitioner's lane, but admitted his view was somewhat obstructed by another car. In any case, the officer turned around and stopped petitioner a couple of blocks further north on Montana.

. . .

5. This court makes no finding as to the evidence of sobriety, which may have been adduced at any time subsequent to the apprehension of petitioner. This court finds that the only issue to be determined in this proceeding is whether or not the officer had "reasonable" grounds to believe that the petitioner was operating a motor vehicle while under the influence, prior to the time he stopped the suspect's vehicle. (Emphasis in original.)

The right of a police officer to make a warrantless arrest in Montana is defined by statute. Section 46-6-401(1)(d), MCA, provides that: "A peace officer may arrest a person when . . . he believes on reasonable grounds that the person is committing an offense or that the person has committed an offense and the existing circumstances require his immediate arrest." The District Court properly defined the issue in this case under the statute, and determined as a conclusion of law:

The conflicting evidence is not sufficient to establish by a preponderance of the evidence, that the arresting officer had reasonable grounds in initially believing that the Blake vehicle was being operated by one under the influence of alcohol on October 11, 1984.

The recitation of facts contained in the majority opinion are at considerable variance from the findings of the District Court. It is the duty of this Court, in appellate review, either to accept the findings of fact by the District Court under Rule 52(a), M.R.Civ.P. or to set them aside as clearly erroneous. The majority opinion fails to set forth

reasons of any kind why the findings of the District Court, apparently based on the credibility of the witnesses, should not be upheld by the majority. Only recently, this Court stated the rules with respect to findings of fact made by a District Court:

> Rule 52(a), M.R.Civ.P. provides in part: "Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The Supreme Court may not substitute its judgment for that of the trial court. The presiding court is confined to determining if there is substantial credible evidence to support the findings of fact and conclusions of law. We view the evidence in the light most favorable to the prevailing party. (Citation omitted.) In construing Rule 52(a) this Court has stated that on review, the trial court's judgment is presumed correct, and this Court will draw every legitimate inference to support that presumption. (Citations omitted.)

Interstate Brands Corp. v. Cannon (Mont. 1985), 708 P.2d 573, 576, 42 St.Rep. 1670, 1674.

## II.

A particularized suspicion of some kind of wrongdoing, which we set out in State v. Gopher (Mont. 1981), 631 P.2d 293, 38 St.Rep. 1078, must still meet the "reasonable grounds" test for a warrantless arrest by a police officer under section 46-6-401(1)(d), MCA. The Gopher test has two elements which the state must prove:

> Primarily applying the rules of Cortez, the State submits that sufficient particularized suspicion existed to justify the stop of defendant's car. The State's burden has two elements: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity . . .

631 P.2d at 296, 38 St.Rep. at 1081.

In Gopher, the police officer had advance information that a crime had been committed and he was observing the

actions of a slow moving automobile in a residential area. In the case at bar, the District Court found nothing more than vehicles in the line of traffic, with one of them making one swerve. The District Court determined that a single swerve of a vehicle to avoid hitting a pedestrian did not suffice to provide reasonable grounds for a warrantless arrest in this case. Gopher did not suspend section 46-6-401(1)(d), MCA as to the necessity for reasonable grounds for a warrantless arrest. If it did we don't need a legislature to make laws.

### III.

The majority opinion implies that the District Court did not rule on the sufficiency of the evidence to establish the police officer had "reasonable grounds" to believe petitioner was driving under the influence of alcohol. The foregoing recitations from the findings of fact and conclusions of law of the district judge belie that implication.

### IV.

More ominous to drivers under the enforcement of traffic laws in Montana, especially with reference to alcoholic driving, is the implication in the majority opinion that a police officer who has placed a driver under arrest may cause the eventual suspension of the driver's license without regard to whether the arrest itself was lawful. Incredibly, the State has argued in this case that the question of the lawfulness of the arrest is not to be considered on review in this type of case and this Court, by implication, seems to agree. The State's position is set forth in its reply brief:

> It is the State's position that Officer Zeitner's arrest of Blake was lawful and that the initial stop was based on a particularized suspicion of wrongdoing. (See Argument I., infra.) It is also the State's response to Blake's argument, however,

that the lawfulness of any arrest does not fall within the purview of what a district court may review in determining whether license is properly suspended or revoked pursuant to the implied consent statute.

Here the State is arguing that section 61-8-403, MCA, providing for the right of a driver to appeal from the license suspension limits the District Court to "whether the officer had reasonable grounds to believe the person had been driving a motor vehicle upon the highways of the state open to the public while under the influence of alcohol, whether the person was placed under arrest, and whether such person refused to submit to the test." The State contends that under the statute, the lawfulness of the arrest is not at issue, and if the defendant is in fact under arrest, whether lawfully accomplished or not, and refuses to submit to a chemical test of his sobriety, he loses his right to a driver's license.

That narrow interpretation of section 61-8-403, MCA, by the State is an issue that should be addressed by the majority and is not. The implication is left, however, from the facts of this case, that an unlawful arrest may still give rise to a suspension of the driver's license.

I would affirm the District Court.

_John C. Sheehy_
Justice

Mr. Justice William E. Hunt, Sr., and Mr. Justice Frank B. Morrison, Jr., dissenting:

We concur in the foregoing dissent of Mr. Justice Sheehy.

_William E Hunt Sr_

_Frank B Morrison_
Justices

- 12 -