No. 04-781

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 193N

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

JOHN WILSON CHAMBERS, III,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and for the Counties of Chouteau and Liberty, Cause Nos. DC 03-12 and
DC 03-286
The Honorable David G. Rice, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Jeremy S. Yellin, Attorney at Law, Havre, Montana

      For Respondent:

      Hon. Mike McGrath, Attorney General; Jennifer Anders,
Assistant Attorney General, Helena, Montana

      Steven A. Gannon, Chouteau County Attorney, Fort Benton, Montana

      Hugh B. Brown, Liberty County Attorney, Chester, Montana

Submitted on Briefs:  June 29, 2005

Decided:  August 9, 2005

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. The decision shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of non-citable cases issued by this Court.

¶2    John Wilson Chambers, III, (Chambers) appeals from the denial by the Twelfth Judicial District Court, Liberty and Chouteau Counties, of his motions to suppress evidence and dismiss prosecution arising out of an investigative stop in Chouteau County regarding criminal conduct in Liberty and Chouteau Counties.  We affirm.

¶3    The sole issue on appeal is whether sufficient particularized suspicion that Chambers had committed an offense existed to support the investigative stop of Chambers' vehicle.

BACKGROUND

¶4    Chouteau County Deputy Keith Dallum (Dallum) arrested Chambers after an investigative stop in Chouteau County on July 20, 2003.  Liberty County law enforcement had notified Dallum of a break-in at the Roadhouse Bar in Chester, Liberty County, and given him the description of a vehicle traveling south on Montana 223 toward Fort Benton in Chouteau County.  The report described an older model two-door car with out of state plates, a rear antenna, and one occupant.  Dallum drove north out of Fort Benton to intercept the suspect vehicle.  Dallum testified that Montana 223 is a lightly traveled road and that he saw no other traffic.  Based on the time of the report and the travel distance from Chester, Dallum expected to see the suspect vehicle between 10 and 15 miles north of Fort Benton.

2

He met a car traveling south near mile marker 12. Dallum identified the car as a blue Chevrolet Lumina four-door with a CB radio antenna on the trunk, a single occupant, and Montana license plate number 3-B16420. Dispatch ran the car's plates and found it was a 1990 vehicle registered to Chambers. At that time Liberty County dispatch also provided a partial plate description of "3106" and directed Chouteau County to have Dallum stop the vehicle.

¶5 Jon Thisselle (Thisselle), a Liberty County resident, earlier had provided a report of a possible break-in and a description of the suspect car to the Liberty County Sheriff's Office. Thisselle had been drinking in the Roadhouse Bar the night before and had slept in his pickup about 150 yards from the bar. A car pulling up and parking next to his truck had awakened him at around 3:30 a.m. Thisselle saw a man leave the car and walk toward the bar and, later, return from the same direction. The man told Thisselle his car was overheated and then he drove away. Thisselle noticed a big antenna on the rear of the car and four numbers of the license plate, "3106." Thisselle watched the car turn south onto Montana 223. Thisselle reported what he had seen and the description of the car to the Liberty County Sheriff's Office.

¶6 Liberty County Deputy Steve Cameron (Cameron) went to the Roadhouse Bar and confirmed Thisselle's report of a possible break-in and theft. Cameron also went with Thisselle to see where the suspect car had been. Cameron saw clear tire track impressions where the car had parked at an angle next to Thisselle's truck, as well as clear shoe prints around where the car had been. Although Cameron knew of Thisselle's reputation as "one of the town drunks" and knew Thisselle had been drinking, he testified that Thisselle had

3

been aware and articulate in his report. Cameron had known Thisselle for many years and had no reason to distrust anything he said. Later, after Dallum had made the stop, Thisselle identified Chambers and the Lumina as the man and the car he had seen in Chester.

¶7 The State charged Chambers in Liberty and Chouteau Counties with felony burglary and related charges for the break-ins at the Roadhouse Bar and other businesses. Chambers filed a motion in each county to suppress evidence and dismiss the actions, alleging that the stop was illegal in that it was unsupported by particularized suspicion. The District Court denied the motions. Chambers pled guilty to two counts of burglary in Liberty County and one count of burglary in Chouteau County pursuant to a plea agreement. Chambers now appeals the District Court's denial of his motions to suppress.

## STANDARD OF REVIEW

¶8 We review a district court's denial of a motion to suppress to determine whether its findings of facts prove clearly erroneous and whether its interpretation and application of the law remains correct. *State v. Dewitt*, 2004 MT 317, ¶ 21, 324 Mont. 39, ¶ 21, 101 P.3d 277, ¶ 21. A court's findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehended the effect of the evidence, or we are convinced by our review of the record that a mistake has been committed. *Dewitt*, ¶ 21. We review de novo the district court's conclusions of law when denying a motion to suppress. *Dewitt*, ¶ 21.

4

¶9 We must determine whether substantial evidence supported the District Court's finding of particularized suspicion to justify the investigative stop of Chambers' vehicle and whether the court correctly applied the law. The statutory standard for an investigative stop provides as follows:

> In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a *particularized suspicion* that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

Section 46-5-401(1), MCA (2003) (emphasis added).

¶10 The existence of particularized suspicion supporting an investigative stop must be proved by showing:

> (1) objective data from which an experienced officer can make certain inferences; and
> (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity.

*State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296. Specific and articulable facts comprising the totality of the circumstances must give the police a particularized and objective basis for suspecting a person of criminal activity. *State v. Martinez*, 2003 MT 65, ¶ 40, 314 Mont. 434, ¶ 40, 67 P.3d 207, ¶ 40 (citing *State v. Reynolds* (1995), 272 Mont. 46, 49-50, 899 P.2d 540, 542).

¶11 Chambers asserts that the District Court erred in its factual findings and in its legal conclusions in denying his motions to suppress. First, Chambers focuses on certain discrepancies in Thisselle's description of the suspect car. He claims the description Dallum

possessed did not include the term "big" antenna, as found by the District Court; the description was wrong because it called for a two-door car with out of state plates; and was incomplete because it did not contain the make, model, color, or condition of the suspect vehicle. Further, Chambers complains that Thisselle's partial plate identification of "3106" was not an exact match with Chambers' license plate number 3-B16420.

¶12 We find that substantial evidence supports the District Court's factual findings and, therefore, its conclusion of particularized suspicion is not clearly erroneous. Dallum put in his report and testified at the suppression hearing that he understood the description of the suspect car to contain a "big" antenna, even though the dispatch transcript does not appear to ever use the term "big" to describe the antenna. We will not disturb the District Court's findings based solely on an inconsistency in the record, provided substantial evidence supports them. *State v. Wetzel*, 2005 MT 154, ¶ 11, 327 Mont. 413, ¶ 11, 114 P.3d 269, ¶ 11. Further, the description transmitted by dispatch included a "rear end antenna" and Dallum testified that he considered that fact a unique descriptor that he identified on Chambers' car before the stop. Therefore, regardless of whether the description included "big" antenna, the fact of a rear end antenna represented a "specific and articulable" fact in the totality of the circumstances supporting the District Court's finding of particularized suspicion justifying the stop. *Martinez*, ¶ 40.

¶13 The other complained of inaccuracies in the suspect car's description do not override the specific and articulable facts upon which Dallum made the stop. As we have noted, "[t]he process does not deal with hard certainties, but with probabilities." *Gopher*, 193 Mont. at 192, 631 P.2d at 295 (quoting *United States v. Cortez* (1981), 449 U.S. 411, 418,

101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629). Substantial evidence in the record of objective data supports the necessary inferences of experienced police officers that Chambers' car had just left the scene of a crime: police had confirmed that a burglary had occurred, Chambers was a single occupant of an older model car, with a rear antenna, traveling south on Montana 223, having left Chester at about 4:00 a.m., all as described by a reliable citizen informant. The partial plate description also added credence to Thisselle's other observations and, considering the totality of the circumstances, supported in part the particularized suspicion necessary for the stop.

¶14 Chambers also claims the District Court misapplied the standards of informant reliability stated in *State v. Pratt* (1997), 286 Mont. 156, 951 P.2d 37, and *State v. Elison*, 2000 MT 288, 302 Mont. 228, 14 P.3d 456. We disagree. The District Court properly considered objective data consisting of specific and articulable facts about what Thisselle saw in Chester. Chambers' attempts to undermine Thisselle's reliability based on his status as the "town drunk" fall short. Thisselle came forth voluntarily and promptly. The officers corroborated Thisselle's claims when they discovered evidence of the break-in, the tire tracks, and the shoe prints.

¶15 Moreover, Cameron knew and trusted Thisselle. Thisselle proved to be aware and articulate when he described what he had seen. Though Thisselle had been drinking the night of the crime, and was known as a "town drunk," the information he gave was objective, specific, articulable, and sufficiently corroborated to establish its trustworthiness. Substantial evidence supports the finding of the District Court regarding Thisselle's reliability and we are similarly "less concerned about Thisselle's state of intoxication than

. . . about those facts that he presented about Defendant's activities and the car he was driving." Accordingly, the District Court properly applied the standards for establishing particularized suspicion for the investigative stop of Chambers' vehicle. The District Court therefore properly denied Chambers' motions to suppress.

¶16  Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

8