DA 23-0229

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 123

FILED

06/17/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0229

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

HALIE MARIA HERZOG,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC-22-65
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Darcy Critchfield, Attorney at Law, PLLC, Billings, Montana

      For Appellee:

         Austin Knudsen, Montana Attorney General, Carrie Garber, Assistant
Attorney General, Helena, Montana

         Marcia Boris, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  May 14, 2025

Decided:  June 17, 2025

Filed:

                                  _____
                                      Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Halie Maria Herzog appeals from the Nineteenth Judicial District Court, Lincoln County's January 3, 2023 Findings of Fact and Conclusions of Law and Order Denying Motion to Suppress. Herzog appeals the District Court's determination that Detective Brandon Holzer had sufficiently particularized suspicion to conduct the stop that led to her arrest.

¶2 We restate the issue on appeal as follows:

*Whether the District Court relied on clearly erroneous findings of fact when it denied Herzog's motion to suppress.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 At approximately 2:30 a.m. on July 18, 2022, Deputy Anthony Jenson with the Lincoln County Sheriff's Office notified Detective Holzer that he had spotted a yellow Volkswagen GTI with Oregon plates parked at a gas pump at the Town Pump on U.S. Highway 2. Detective Holzer, who is a member of the Northwest Drug Task Force, had been looking for the Volkswagen since it was stopped by Border Patrol agents on July 5, 2022. Deputy Jenson observed the Volkswagen pulling out of the Town Pump and heading east down Highway 2, so he pulled onto the highway to follow it. The Volkswagen then pulled "abruptly" into another gas station and parked at a pump. Deputy Jenson did not observe anyone fueling the Volkswagen at either gas station.

¶4 At approximately 2:45 a.m., the Volkswagen left the Town Pump, again traveling east on Highway 2. Deputy Jenson, who had traveled past the second gas station and parked on the side of the highway, watched as the Volkswagen turned off Highway 2 onto

Farm to Market Road. Deputy Jenson continued to follow the Volkswagen as it made three more turns, ultimately ending up back on Highway 2, and then made two more turns to get back on to Farm to Market Road, still heading east. Deputy Jenson noted that this series of turns was "odd," because it made eastbound travel significantly slower but did not seem to have any other purpose.

¶5 Detective Holzer, who was eastbound on Highway 2 behind Deputy Jenson, told the Deputy that he could return to Libby while the Detective continued to follow the Volkswagen. Detective Holzer passed the Volkswagen and parked at Happy's Inn to wait for it to pass. Detective Holzer waited approximately 30 minutes without seeing the Volkswagen, so he began heading back west on Highway 2 to see if he could locate it. At mile marker 50, he observed a light like a "lighter strike" in the woods to the side of the eastbound lanes. He turned around and pulled on to a dirt road that ran off of the highway, where he found the Volkswagen parked in the brush next to the dirt road.

¶6 Detective Holzer turned on his grill lights to identify himself as law enforcement, and when the Volkswagen began to pull forward, he ordered it to stop. Holzer approached the driver's side of the Volkswagen, where he identified the passenger as Herzog. As soon as the driver rolled his window down, Detective Holzer smelled burnt methamphetamine, marijuana, and "heavy colognes," which he knew were often used to mask the smell of drug use. Detective Holzer called for a canine unit, and the canine alerted to the presence of drugs in the vehicle. Officers searched Herzog and the vehicle and located drug paraphernalia in her purse and methamphetamine in the vehicle.

3

¶7 The State charged Herzog with Criminal Possession of Dangerous Drugs and Criminal Possession of Drug Paraphernalia. Herzog moved to suppress the evidence seized during the search of her purse and the vehicle, arguing that Detective Holzer lacked sufficiently particularized suspicion to initiate the stop of the Volkswagen that led to the seizure. On December 6, 2022, the District Court held a hearing on Herzog's motion, at which Detective Holzer testified. On January 3, 2023, the District Court issued its Order denying Herzog's motion, determining that "Holzer's particularized suspicion for making contact was that [the Volkswagen's occupants] were in possession of dangerous drugs."

¶8 On January 11, 2023, Herzog and the State reached a plea agreement, pursuant to which Herzog agreed to plead guilty to Criminal Possession of Dangerous Drugs in exchange for the State's dismissal of the Criminal Possession of Drug Paraphernalia charge. The plea agreement preserved Herzog's right to appeal the District Court's suppression order.

**STANDARD OF REVIEW**

¶9 We review a district court's denial of a motion to suppress to determine whether its findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Van Kirk*, 2001 MT 184, ¶ 10, 306 Mont. 215, 32 P.3d 735. A lower court's findings of fact are clearly erroneous only if not supported by substantial credible evidence, the lower court misapprehended the effect of the evidence, or we are nonetheless left with a firm and definite conviction that the lower court was simply mistaken. *State v. Hoover*, 2017 MT 236, ¶ 12, 388 Mont. 533, 402 P.3d 1224.

## DISCUSSION

¶10    *Whether the District Court relied on clearly erroneous findings of fact when it denied Herzog's motion to suppress.*

¶11    Herzog argues that the District Court relied on clearly erroneous findings of fact in support of its determination that Detective Holzer had sufficiently particularized suspicion to stop the Volkswagen. Article II, Section 11, of the Montana Constitution and the Fourth Amendment to the United States Constitution provide individuals protection from unreasonable searches and seizures. As a procedural component of those protections, government searches and seizures are generally constitutionally unreasonable, and thus unlawful, unless conducted in accordance with a judicial warrant issued on probable cause. *Hoover*, ¶ 14. Investigative stops of persons by police, including traffic or vehicle stops, are constitutional "seizures" subject to the warrant and probable cause requirements of the Fourth Amendment and Article II, Section 11. *State v. Noli*, 2023 MT 84, ¶ 29, 412 Mont. 170, 529 P.3d 813.

¶12    A temporary investigative stop, or *Terry* stop, is a recognized exception to the Fourth Amendment and Article II, Section 11 warrant and probable cause requirements. *State v. Gopher*, 193 Mont. 189, 192-94, 631 P.2d 293, 295-96 (1981) (recognizing and applying the temporary investigative stop exception first enunciated in *Terry v. Ohio*, 392 U.S. 1, 15-16, 88 S. Ct. 1868, 1876-77 (1968)). Under this narrow exception, a police officer may stop a vehicle or person when there exists "a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401(1), MCA; *see also Noli*, ¶ 30. "[T]he State has the burden of

5

affirmatively proving and demonstrating that the subject officer(s) had the requisite particularized suspicion of criminal activity based on specific and articulable objective facts known to, and reasonable inferences made by, the officer(s) under the totality of the circumstances of record." *Noli*, ¶ 31.

¶13 The parties dispute when Detective Holzer first "seized" the Volkswagen and Herzog. A constitutional seizure of a person occurs when a government officer "in some way" restrains a person's liberty by means of physical force or show of authority that, under the totality of the circumstances, would cause an objectively reasonable person to believe that the person is not free to leave the presence of the officer. *City of Missoula v. Kroschel*, 2018 MT 142, ¶ 10, 391 Mont. 457, 419 P.3d 1208. Herzog asserts that the Detective seized her and the Volkswagen when he pulled up to them and turned on his grill lights. The State asserts that the seizure did not take place until Detective Holzer ordered the Volkswagen to stop. This dispute arises because Detective Holzer did not affirmatively identify the occupants of the vehicle until after he turned on his grill lights and could see their faces. Therefore, any reasonable suspicion he had to stop the vehicle could not have been based on the occupants' identities until after he turned his grill lights on. Because we find that Detective Holzer had reasonable suspicion to stop the Volkswagen before he knew the identities of its occupants, when exactly the seizure took place is immaterial to the issue at hand.

¶14 The District Court made several findings of fact in its January 3, 2023 Order, including the following: (1) "Law enforcement observed the vehicle at two different gas stations . . . . After the vehicle left Town Pump, deputies observed that the vehicle appeared

6

to be attempting to avoid law enforcement by turning onto various back roads"; (2) "Detective Holzer was ultimately alerted to the location of the vehicle by a flash that appeared to be that of a lighter"; and (3) "He observed the yellow Volkswagen backed up into the brush off the road." These facts were all supported by Detective Holzer's testimony at the December 6, 2022 suppression hearing and affidavits in the record. The District Court referenced all three facts in its ultimate conclusion that Detective Holzer had sufficiently particularized suspicion to conduct a *Terry* stop. None of those facts depend on the identity of the occupants of the Volkswagen.

¶15 In *Van Kirk*, we determined that reasonable suspicion may be partially supported by an officer's belief, supported by objective evidence, that a driver is attempting to avoid law enforcement. *Van Kirk*, ¶¶ 16-17. The driver's attempts to avoid the officer in *Van Kirk* amounted to "pulling into and then immediately pulling back out of a parking lot after spotting [the officer's] patrol car." *Van Kirk*, ¶ 16. The driver of the Volkswagen in this case not only did essentially the same thing by pulling out of the Town Pump and then almost immediately back into the second station without getting gas but then proceeded to pull on and off the highway several times, making a series of turns without changing their direction of travel. Deputy Jenson noted at the time that this was odd behavior and indicated that the driver of the Volkswagen was attempting to avoid him.

¶16 We have also observed that a driver's decision to park irregularly, even if not illegally, can contribute to an officer's reasonable suspicion. *State v. Zeimer*, 2022 MT 96, ¶ 34, 408 Mont. 433, 510 P.3d 100. In *Zeimer*, we determined that an officer was entitled to rely on the fact that a truck driver had parked "perpendicularly across several lined

7

parking spaces" in forming a particularized suspicion that the driver of the truck was under the influence. *Zeimer*, ¶ 34. While the State does not allege that the Volkswagen was parked illegally in the bushes off the highway, Detective Holzer did note the oddity of pulling not only off the highway but also into the bushes off the dirt road.

¶17 Detective Holzer also noticed the spark of the lighter while traveling on the other side of the highway. Standing alone, the spark of a lighter on the side of the highway may not have given rise to the suspicion of drug use. But Detective Holzer's observation was after having just observed over the course of the past hour the car engaged in unusual travel that appeared to be attempting to avoid law enforcement and having parked in the bushes on the side of the highway. The District Court's factual findings in this regard were not clearly erroneous, and the totality of these findings provided a sufficient basis for the District Court's determination that Detective Holzer had sufficient particularized suspicion of criminal activity to initiate a *Terry* Stop.

## CONCLUSION

¶18 The District Court did not rely on clearly erroneous findings of fact when it denied Herzog's motion to suppress. The District Court's January 3, 2023 Findings of Fact and Conclusions of Law and Order Denying Motion to Suppress is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE

Justice Katherine Bidegaray, concurring.

¶19    I concur with the Majority's decision affirming the denial of Herzog's motion to suppress, agreeing that the totality of circumstances presented to Detective Holzer justified his investigatory stop under current Montana law. I write separately, however, to emphasize caution in broadly interpreting seemingly innocuous conduct as grounds for particularized suspicion.

¶20    The Majority accurately identifies that Herzog's evasive driving behavior, irregular parking, and attempted departure upon Detective Holzer's arrival, combined with other contextual observations, were sufficient to meet the threshold for particularized suspicion. The decision rightly relies on established precedent, including *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735, and *State v. Zeimer*, 2022 MT 96, 408 Mont. 433, 510 P.3d 100, which support consideration of objectively unusual vehicle maneuvers and irregular parking as factors contributing to reasonable suspicion.

¶21    Nonetheless, I am concerned by the reliance upon ambiguous indicators, such as the brief sighting of a lighter spark, as supportive of particularized suspicion. While such a factor may provide context, standing alone it carries minimal probative value regarding criminal activity. Innocuous behaviors, particularly in isolation or when minimally corroborated, must be carefully scrutinized to avoid diluting constitutional protections under Article II, Section 11, of the Montana Constitution.

¶22    Privacy interests and protections against unreasonable governmental intrusion demand rigorous judicial vigilance. Courts must carefully distinguish genuinely suspicious conduct from ordinary or ambiguous behavior. Though Detective Holzer's observations

9

in this case collectively satisfy particularized suspicion requirements, courts and law enforcement alike must be cautious not to lower the standard of suspicion to the point where normal, lawful conduct routinely becomes grounds for investigative detention.

¶23 With these considerations in mind, I concur in affirming the denial of Herzog's suppression motion but stress the importance of restraint in future interpretations of similarly ambiguous behaviors.

/S/ KATHERINE M BIDEGARAY

Justices Ingrid Gustafson and Laurie McKinnon join in the concurring Opinion of Justice Katherine Bidegaray.

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON